**BRUNDRETT et al. v. LUCAS.**
(No. 5777.)

(Court of Civil Appeals of Texas. San Antonio.
April 4, 1917. Rehearing Denied
May 2, 1917.)

**1. Taxation ⬦449(1)—Equalization—Powers of Board—Necessity of Complaint.**

Under Rev. St. 1911, art. 7570, empowering boards of equalization to supervise assessment of property and to increase or diminish the same and to affix a proper valuation, and article 7564, giving the board full power to equalize assessments regardless of whether any complaint has been made by the assessor or any one else, it is not a prerequisite to an equalization that complaint be made by the assessor.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 790–792, 795, 797.]

**2. Taxation ⬦482(4)—Assessment—Equalization—Waiver of Defects.**

A property owner who attended a meeting and objected to the raising of his assessment waived all defects in notice, and an order entered at such meeting cannot be attacked for defects in the proceedings antedating such meeting.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. § 857.]

**3. Taxation ⬦485(3)—Equalization—Proceedings—Evidence.**

Evidence *held* to show that at an equalization hearing no testimony of value of land was taken other than that of the property owner's witnesses, so that the increase was unwarranted.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. § 863.]

**4. Taxation ⬦480 — Equalization — Proceedings—Validity—Evidence.**

Rev. St. 1911, art. 7569, provides that, when any person, firm, or corporation renders property for taxation, and makes oath as to the quality and quantity of such property, the officer shall list it according to such value, or his own estimate, and, if the owner is not satisfied with the value placed on the property by the assessor, he shall notify the assessor, and may make oath that such valuation is excessive; then such officer shall furnish such rendition, with his valuation and the oath, to the commissioners' court, which shall hear evidence and determine the true value of such property. Article 7570 provides that the boards of equalization shall have power, and it is made their official duty, to supervise assessment, and, if the valuation of any property is not in accordance with the laws of the state, to increase or diminish the same and affix a proper valuation thereto, as provided for in article 7569; and, when any assessor shall have furnished said court with the rendition as provided for in article 7569, it shall be the duty of such court to call before it such persons as in its judgment may know the market value or true value of such property, who shall testify under oath the quality and quantity of such property, as well as the value thereof, and the court shall fix the value of such property in accordance with the evidence so introduced and as provided for in article 7569, and their action in such case or cases shall be final. *Held*, that the method indicated in article 7570 must be followed whether the issue is raised by the board or by a controversy between the assessor and owner.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. § 853.]

**5. Taxation ⬦485(4)—Equalization—Proceedings—Evidence.**

Under Rev. St. 1911, arts. 7569, 7570, the board of equalization could not legally disregard testimony of value introduced on the ground that it was not believed, but, if it fails to summon witnesses of its own, must fix values according to the evidence actually introduced.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. § 864.]

**6. Taxation ⬦485(4)—Equalization—Proceedings—Evidence.**

Under Rev. St. 1911, arts. 7569, 7570, where the board of equalization failed to summon witnesses of its own, the property owner could not rely upon such failure to invalidate the proceedings.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. § 864.]

**7. Taxation ⬦485(4)—Wrongful Assessment—Remedies.**

The action of the board of equalization in disregarding testimony introduced which was not disputed nor impeached, contrary to Rev. St. 1911, arts. 7569, 7570, furnishes a sufficient basis for a suit to enjoin collection of taxes on the increased value.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. § 864.]

**8. Taxation ⬦480 — Equalization — Proceedings.**

The oath of the taxpayer is not a prerequisite to procedure as to witnesses when the board of equalization on its own motion undertakes to raise values.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. § 853.]

**9. Taxation ⬦485(3)—Equalization—Rendition of Assessment—Evidence.**

Evidence that parts of the land in a certain town were assessed below market value is insufficient on which to base a finding that such condition existed generally.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. § 863.]

**10. Taxation ⬦485(3)—Equalization—Increase of Assessments—Evidence.**

Evidence *held* insufficient to show that banks in a certain county were assessed at 75 per cent. of their real value.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. § 863.]

**11. Taxation ⬦40(7) — Uniformity — Evidence.**

The mere fact that certain property was assessed at less than its real value does not show discrimination in assessing other property at its real value, in the absence of evidence of a scheme or plan to permit inadequate valuations.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. § 78.]

**12. Taxation ⬦494(3) — Equalization — Proceedings—Validity.**

Where the board of equalization failed to summon witnesses, but raised assessments in the face of evidence showing that they should not be raised, the district court in suit to enjoin collection of the assessment could only set it aside.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. § 886.]

**13. Taxation ⬦611(6)—Restraining Collection — Equalization — Evidence — Admissibility.**

In suit to enjoin collection of taxes after the assessment had been raised, evidence of what the owner paid for the land was admissible.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. § 1252.]

⬦For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

14. TAXATION ⬠⟶611(6)—EQUALIZATION—EVIDENCE—ADMISSIBILITY.

In suit to enjoin collection of taxes after the assessment had been raised, evidence of a standing offer of a certain amount per acre for the land was admissible.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. § 1252.]

Appeal from District Court, Aransas County; F. G. Chambliss, Judge.

Suit by Cyrus B. Lucas against J. A. Brundrett and others. Judgment for plaintiff in part, and defendants appeal. Affirmed.

W. H. Baldwin, of Rockport, and Kleberg, Stayton & Picton, of Corpus Christi, for appellants. E. A. Stevens, of Rockport, and Templeton, Brooks, Napier & Ogden, of San Antonio, for appellee.

MOURSUND, J. We adopt appellants' statement of the pleadings, as follows:

"Cyrus B. Lucas brought this suit against the tax collector, the county judge, and the several county commissioners of Aransas county to vacate raises in tax assessments on some of his real property and an assessment on his personal property alleged to have been made by the latter, sitting as a board of equalization in May and June, 1915, and to enjoin the collection of taxes based thereon, setting up many grounds for such relief, some of which were charged to have been illegal and void under the Fourteenth Amendment of the federal Constitution, and under the due process, equal protection, equal and uniform taxation, and due taxation provisions of the state Constitution.

"Besides that concerning the personal property, the grounds alleged were that:

"(1) The board raised the valuations on the real estate without complaint or recommendation from the assessor.

"(2) It first, without notice to the plaintiff, raised such valuations, then caused plaintiff to be notified to appear and contest its action, and then confirmed what it had first done without notice.

"(3) Its valuations were without any legal basis.

"(4) It did not itself summon, swear, and hear any witnesses on such question, plaintiff's witnesses being the only ones examined.

"(5) It found on values contrary to the testimony of plaintiff's witnesses at the hearing, who were the only witnesses heard.

"(6) It failed to classify lands in the county.

"(7) Its action in raising the valuations was arbitrary and fraudulent, in being contrary to the undisputed testimony before the board and in imposing uniform valuations on lands of unequal value, in failure of notice, and in most of the other alleged acts and omissions of the board.

"(8) Its valuations were excessive and discriminative.

"Defendants denied all of the above allegations on the part of plaintiff.

"The trial judge, on final hearing, by his conclusions, found in favor of plaintiff upon all issues, save as to the assessment of his personal property, and failure to classify, arbitrariness, and fraud, and rendered judgment in favor of defendants as to the personal property assessment, and in favor of plaintiff as to the valuations on the real estate above those made by the assessor."

The court rendered judgment in favor of defendants as to the personal property assessment and in favor of plaintiff as to the valuations on the real estate above those made by the assessor. Defendants appealed.

The trial court filed the following findings of fact and conclusions of law:

"Finding of Facts.

"(1) I find that the tax assessor of Aransas county listed all the lands of the plaintiff in said county and assessed the same for the taxes levied for the year 1915 at valuations as alleged by the plaintiff, and that the plaintiff did not complain of the valuations so fixed by the said assessor.

"(2) That the plaintiff entered his personal property upon said list, and the said assessor valued the same.

"(3) That the said tax assessor delivered the plaintiff's said tax list to the board of equalization as the law requires without any complaint or recommendation as to the valuations which he himself had fixed upon said lands.

"(4) That on the 29th day of May, 1915, the board of equalization of said county without notice to the plaintiff raised the valuations of certain tracts of said land as alleged in the plaintiff's petition.

"(5) That on the 1st day of June, 1915, the said board of equalization by an order entered in its minutes directed the county clerk to notify the plaintiff that his assessments for taxation in said county for the year 1915 had been raised and that said board would meet on the 15th day of June, 1915, to hear persons who desired to come before said board to show cause why their assessments should not be raised and that said clerk did give such notice.

"(6) That on the 15th day of June, 1915, the plaintiff appeared before said board and filed a written protest against the action of said board in raising his said assessments, and that he introduced before said board credible persons who were duly sworn as witnesses and who testified before said board as witnesses concerning the character, quality, quantity, and value of said lands, and that the testimony of said witnesses showed that the value of said lands were very much less than the valuations to which said board had raised said lands and were not of greater value than as fixed by said assessor.

"(7) That said board of equalization did not summon any witnesses to testify before it as to the character, quality, quantity, or value of said lands, nor did it swear other witnesses than those introduced by the plaintiff, nor hear other testimony than that offered by the plaintiff.

"(8) That, after hearing said protest and said testimony offered by the plaintiff, the said board caused to be entered in its minutes an order reciting that said board confirmed its action of May 29, 1915, in raising the assessments of said lands.

"(9) That the plaintiff's said lands, the valuations of which had been raised by said board of equalization, as aforesaid, had no market value in the year 1915, and that the real or intrinsic value of said lands did not exceed the valuations fixed thereon by the said tax assessor, and that the valuations to which said board had raised said lands was very much above the real or intrinsic value of said land.

"(10) That the valuations at which real estate in the city of Rockport in said county was fixed by said tax assessor and approved by said board of equalization at from 50 to 75 per cent. of its market value generally, and that the banks of said county were assessed at 75 per cent. of their real value, which valuations were approved by said board.

"Conclusions of Law.

"(1) I find that the action of said board of equalization in raising the valuations of the

plaintiff's said lands was voidable for the reason that the valuations fixed by said board were excessive and discriminative.

"(2) That the action of said board in raising the assessments of the plaintiff's said lands was unauthorized by law, and was therefore void, and that it created no additional liability on the part of the plaintiff.

"(3) That the temporary injunction heretofore granted should be so modified as to permit the defendants to proceed with the collection of taxes due by reason of the assessments of all personal property, but perpetually enjoining the defendants from endeavoring to collect any taxes upon the increased valuations of said lands as raised by said board."

The third finding of fact is supported by the evidence, and therefore assignments 1 and 2 are overruled.

By assignments 3 and 4 it is contended that the judgment in so far as it may be based upon any failure of the tax assessor to make complaint or recommendation is erroneous, because no duty rested upon the board of equalization to await any such complaint before raising the values.

In the case of I. & G. N. R. R. Co. v. Smith County, 54 Tex. 1, the court, after stating that under chapter 153, Acts of 1876, the valuation placed upon property in a rendition could only be changed when the assessor and board of equalization both agreed that it was too low, said:

"In this respect the statute now provides differently"—and cited General Laws of 1879, p. 44, art. 4715.

The act appearing on page 44, General Laws of 1879, became article 5120, R. S. 1895, and article 7564, R. S. 1911. The revisors shortened the language in 1895, and in 1899 the Legislature changed the time for the convening of the board of equalization. Article 4715, cited by the court, appears in the Revised Statutes of 1879, adopted at the same session of the Legislature during which the act above discussed was enacted, and appears to have originated with the commissioners who revised the statutes. The adoption of said statutes did not affect any laws enacted at the same session. Section 20, final title. Article 4715 became article 5124, R. S. 1895, and read as follows:

"The boards of equalization shall have power, without complaint from any one, to supervise the assessments of their respective counties, and if satisfied that the valuation of any property is not just and fair, to increase or diminish the same, and to affix a proper valuation thereto; and their action in such cases shall be final and not subject to revision by said board or any other tribunal thereafter."

[1] We conclude that the act of 1879 which became article 5120, R. S. 1895, and article 4715, R. S. 1879, were both designed to give the board of equalization the power to equalize assessments in all cases, regardless of whether the assessor or any one else made complaint, and this appears to have been the construction placed thereon by the Supreme Court when it cited both provisions in support of its statement with reference to the change made.

In 1907 said article 4715, then No. 5124, was amended so that the first portion thereof reads as follows:

."The boards of equalization shall have power, and it is made their official duty, to supervise the assessment of their respective counties, and, if satisfied that the valuation of any property is not in accordance with the laws of the state, to increase or diminish the same and to affix a proper valuation thereto, as provided for in article 7569 of this chapter. * * *"

As thus amended, it now appears as article 7570, R. S. 1911. As it now reads, it still confers ample power to equalize without complaint, even though the words "without complaint from any one" were omitted; but if such omission could be given the effect contended for by appellee, nevertheless article 7564 gives the board full power to equalize and makes it the duty of the board to do so, regardless of whether any complaint has been made by the assessor or any one else. This article received renewed legislative approval in 1909, and therefore cannot be said to be affected by the repeal clause of the act of 1907 had there been a conflict between the two acts. We conclude that the judgment cannot be sustained on the theory that, as the assessor made no complaint, the action of the board was not authorized.

[2] The judgment cannot be sustained on the theory that plaintiff had no notice of the proceedings; for it appears that he attended the June meeting, filed a protest, and introduced testimony, and thereafter an order was entered confirming, fixing, substantiating, and making binding the valuations fixed at the previous meeting. It is useless to inquire whether the valuations were fixed at the previous meeting or only tentatively entered for purposes of notice so that the parties would be informed of the extent of the raise proposed to be made. Plaintiff waived all defects in notice, and the order entered at the June term cannot be attacked for 'defects in the proceedings antedating the June hearing.

The seventh assignment reads as follows:

"The judgment of the court, in so far as the same is based upon any arbitrary action of the board of equalization in fixing valuations without any basis therefor, is erroneous because the evidence does not negative that such board had a proper basis."

Nine propositions are submitted. Some of them relate merely to the rules of law to be applied in testing the evidence, and are correct. The propositions relating to the application of such rules to the evidence in this case may be said to raise the following contentions: (1) That there was no evidence that the board found contrary to the testimony of plaintiff's witnesses or that as a basis of such increase said board did not have legal evidence to justify the same; (2) that evidence to the effect that the board disregarded the testimony of plaintiff's witnesses is no evidence that their action had no proper and legal basis; (3) that evidence of the failure upon two occasions to examine wit-

nesses called by the board is no evidence that the board did not have a proper and legal basis; (4) that, even if the board never called any witnesses of its own, the failure to do so would not of itself render the board's action without basis to the extent that a ·suit could be maintained in the district court for annulment and injunction; (5) ·that oath of the taxpayer is prerequisite to the procedure as to witnesses provided in R. S. art. 7570, and, no such oath having been filed, it was not necessary to summon witnesses. Our conclusions on these contentions are as follows:

[3] (1) The sixth and seventh findings of fact filed by the trial court are supported by the evidence. It is contended by appellant that the testimony introduced before the board was sufficient to support a finding as to value in accord with that fixed by the board on plaintiff's land, and in this connection reference is made to the testimony of Green and Moore. Green only testified that he was more or less familiar with the soils in the county, and that all the land he had seen was "very much of the same grade." This statement did not show such familiarity with the land in the county as to give his opinion any probative force. Moore's testimony cannot be held to contradict the positive testimony of the witnesses who testified to the value of plaintiff's lands, because he had only been over portions of it, and he did not show what portions, so it cannot be said that his testimony contradicts that of the other witnesses. It is urged, however, that plaintiff testified that Kroeger was one of the witnesses who testified upon the hearing and that the testimony of said witness was not introduced in evidence in the district court, and the same might have justified the finding made by the board. We find that Judge Stevens testified that the testimony in the transcript outside of that introduced upon the trial in the district court related to lands other than the black-jack land (plaintiff's land, the value of which was involved, being situated upon what was called the black-jack peninsula). Defendants introduced the testimony of Green and Moore, and failed to offer that of Kroeger, which is a circumstance supporting the statement by Judge Stevens. We consider the testimony ample to exclude any inference that Kroeger's testimony might have supported the action of the board. The evidence satisfies the mind that at no time during the meeting of the board were any witnesses examined on the subject of the value of plaintiff's lands except those produced by the plaintiff. We do not mean to imply by the foregoing statement that we understand the law to permit the board to hear witnesses or introduce evidence at a time other than the one set for the hearing.

[4] (2) In view of the fact that the first part of article 7570, wherein the general power to increase or diminish valuations is recognized, refers to article 7569 for a method to be observed in determining values, and article 7569 refers to the latter part of article 7570 for such method, it appears that the Legislature intended that the method prescribed in said latter part of article 7570 is to be followed in determining values, whether the issue is raised by the board or by a controversy between the assessor and the owner. The caption of the act is broad enough to support the construction placed upon the act by us, for it merely says "prescribing rules for determining the value of property." The emergency clause of the act indicates that it was passed because the laws then in effect were deemed inadequate for the determination of the values of property for tax purposes. The act was designed to prevent the tax assessor and the county commissioners from accepting valuations which are less than the reasonable cash value, and no good reason can be urged why a different rule should prevail in determining values when the assessor makes complaint than if the board undertakes on its own motion to raise the assessment. It was apparently the intention of the Legislature to place such restrictions upon these officers as to prevent systematic acceptance of renditions of property for less than the reasonable cash value thereof, and if this purpose could be accomplished by the requirement to summon witnesses and fix values in accordance with the evidence, it is improbable that any intention existed to fix some values by that method and other values by the method theretofore· prevailing. If the provision be regarded as one for the protection of the taxpayer, and it must be regarded as so intended if it has that effect, no good reason could be urged why he should not receive the same protection when the tax assessor is satisfied with the values as when such officer is dissatisfied therewith. But it is contended that the mandatory language employed in article 7570 must be construed in connection with the oath prescribed for the members of the board in the same act, which binds them not to vote to allow any taxable property to stand assessed for any sum which they believe to be less than its value, and that, when so construed, it should be held that, if the board does not believe the witnesses, their testimony must be disregarded and valuations fixed in accordance with the belief of the members of the board. Such a construction would practically destroy that part of article 7570 providing a method for fixing values.

[5] We think it must be held that the oath was prescribed in order to cause members of the board to take steps to determine the value of all property which they believe is assessed too low, and to fix the value at such sum as they believe from the evidence is the reasonable cash value of the property. We conclude, therefore, that the board could not legally disregard the testimony introduced, upon the ground that it was not believed, but, having failed to summon witnesses of its

own, as required by law, was required to fix values in accordance with the evidence actually introduced.

In view of the fact that the seventh finding only states that no other testimony was introduced than that offered by plaintiff, it may be said that the court made no finding as to whether any evidence other than oral evidence was introduced. We find, in support of the judgment, that upon the hearing of the matter relating to plaintiff's rendition no other evidence was introduced than the testimony of the witnesses produced by plaintiff. This finding makes it ·unnecessary to decide whether upon such a hearing the board is restricted to oral evidence, a point very uncertain of ascertainment in view of the wording of articles 7564, 7569, and 7570.

[6] (3) Plaintiff having introduced the testimony of witnesses, the failure of the board to summon and examine witnesses of its own cannot be relied upon by plaintiff to invalidate the action of the board, but the board in such case must give the same effect to the testimony of plaintiff's witnesses as if they had been summoned by the board under the provisions of the statute.

[7] (4) The action of the board in disregarding the testimony introduced, which testimony was not disputed, nor impeached by documentary evidence, was arbitrary and directly in the face of a mandatory statute, and furnished a sufficient basis for a suit in the district court to enjoin the collection of taxes upon the increased value thus made in the assessments.

[8] (5) The oath of the taxpayer is not a prerequisite to the procedure as to witnesses when the board on its own motion undertakes to raise values, whatever may be the holding on such question in a case of disagreement between the assessor and the taxpayer.

The eighth, ninth, tenth, and twelfth assignments relate to matters discussed in considering the sixth assignment, and are overruled for reasons there stated; while the eleventh assignment, which merely asserts that the failure of the board to summon witnesses of its own could not in this case constitute sufficient ground to uphold the judgment, is sustained.

Appellant contends in the thirteenth assignment that the judgment cannot be sustained upon the ground of failure to classify, and we agree with him, but, as the court did not find on such issue, the point is immaterial.

The fourteenth assignment is overruled, because we conclude that the action of the board in disregarding the evidence was arbitrary, as hereinbefore pointed out.

We have already held that the sixth finding is supported by the evidence, and therefore overrule the fifteenth assignment.

The sixteenth, seventeenth, and eighteenth assignments are sustained. However, the trial court did not base his judgment upon any theory of fraud, nor do we base our affirmance thereof upon any such theory, and as we have held that the validity of the raise in valuation cannot be attacked on the ground of irregularities, if any, at the May meeting, the questions raised by said assignments become immaterial.

[9] We sustain the twentieth assignment, in which the tenth finding of fact is attacked, in so far as it relates to real estate in Rockport, and adopt appellant's proposition to the effect that the evidence showed no more than that the valuations of an indefinite part of the real estate in Rockport were below market values, and that it therefore furnished no basis for a finding that such condition existed generally.

[10] By the twenty-first assignment complaint is made of that part of the tenth finding relating to the banks of Aransas county. The finding is based on evidence which was intended to show the real value of the assets of the banks, and consisted of financial statements supported by testimony with regard to dividends. We doubt whether this is sufficient, but at best it only shows that one bank was assessed at the rate of approximately 74 per cent. including real estate, while another was assessed at about 66 per cent. of its value, including real estate. This does not support the general finding that the banks of the county were assessed at 75 per cent. of their real value. We therefore sustain the assignment.

[11] Having held that the tenth finding is not supported by the evidence, the question naturally arises, regardless of an assignment of error, whether the facts as we find them to have existed as shown by the evidence relating to Rockport property and bank valuations, support a conclusion that there was such discrimination and excessive valuation as to sustain the judgment. The evidence wholly fails to show that the undervaluation of the real estate mentioned by the witness as situated in Rockport was the result of any deliberately adopted policy or scheme, such as was shown in the cases of Lively v. Railway, 102 Tex. 559, 120 S. W. 852; Brown v. Bank, 175 S. W. 1122, and others cited by appellee, in which it was shown that large classes of property were intentionally and deliberately assessed at a certain per cent. of their value, while other property was intentionally assessed at .its full value. The evidence, considered most strongly for appellee, shows that one bank was assessed at about 75 per cent. of the value of its assets, while another was assessed at about 66 per cent. of the value of its assets, and that quite a number of pieces of property in Rockport were assessed at less than their actual value, without showing that such assessments were made pursuant to any system, such as valuing them for a certain per cent, of their actual value. If a showing of that kind be sufficient, a large portion of the taxpayers in any county could go into the district court

and reduce their assessments. Nor does the evidence in this case show, as did that in the case of Johnson v. Holland, 17 Tex. Civ. App. 210, 43 S. W. 71, that the discrepancy between appellee's assessment and others shown by the testimony was not the result of an error of honest judgment, but of intentionally, arbitrarily, and fraudulently fixing the value of one person's property at more than it was worth, while other property was assessed at less than its value. The court did not find that any actual fraud existed, nor does the evidence support such a finding.

We therefore conclude that, if this case had been tried under our statutes as they existed prior to the amendment of 1907, appellee would not have made out a case, for there was no such discrimination or excess as, under the well-established rules of law applicable to tax cases, would support a judgment setting aside valuations.

[12] In speaking of excessive valuation, we are taking as correct the finding of the trial judge to the effect that the valuation adopted by the board, namely, of about $5 per acre, was excessive to the extent of about $2 per acre. This finding is not attacked, but several assignments attack the rulings of the court in regard to excluding evidence relating to value, and some of such assignments are deemed by us to be well taken. Therefore, if this affirmance of the judgment must depend upon whether the value fixed by the board is in fact in excess of the reasonable cash value, the sustaining of such assignments would require the reversal of the judgment. However, we do not think the failure of the board to comply with the terms of a mandatory statute can be justified by showing that, if the same witnesses had been summoned and same evidence introduced as upon the hearing in the district court, the order of the board would have been sustained by evidence. When the board arbitrarily failed and refused to follow the law, and raised valuations contrary to the express provisions of the statute, it must be held that the raise should be set aside and held for naught by the district court.

The twenty-second, thirty-first, thirty-second, thirty-third, fifty-first, fifty-second, and fifty-third assignments relate to the questions of discrimination and excess, already discussed, and will be sustained.

The twenty-third assignment is overruled. We cannot say that the finding that plaintiff's land had no market value in 1915 is so manifestly against the weight and preponderance of the evidence as to authorize us to set it aside. The twenty-fifth, fifty-fourth, and fifty-fifth assignments are also overruled.

The twenty-sixth assignment is overruled.

The twenty-seventh and twenty-eighth are sustained upon the authority of the case of Railway v. Scurlock, 97 Tex. 309, 78 S. W. 490.

[13] The twenty-ninth assignment is also sustained. What appellee gave for portions of the land involved was admissible, especially as there was testimony to the effect that land values had risen steadily since appellee made such purchases. Appellee combats these assignments on the theory that the evidence did not tend to show market value, but, as it was a mooted question whether the land had a market value, and the court found it did not, and found as to the intrinsic value, the evidence was clearly admissible.

[14] The thirtieth assignment is also sustained. The witness would have testified that appellee's offer of $7.50 per acre for 620 acres was a standing offer, that is, a continuing one, and that the land was the brushiest portion of the black-jacks. Even if the offer had not been a standing one, but made in 1908 or 1909, in view of there being testimony that land values had advanced steadily, the evidence was admissible.

The thirty-fourth assignment is overruled.

The point raised in the thirty-fifth assignment has been decided adversely to appellants' contention, and the assignment is overruled. Brown v. Bank, 175 S. W. 1124; Porter v. Langley, 155 S. W. 1043.

The questions raised by the thirty-sixth, thirty-seventh, and thirty-eighth assignments are immaterial, in view of our holding upon the fifth and sixth assignments.

The thirty-ninth assignment is sustained for reasons given in discussing the fifth and sixth assignments.

The fortieth assignment is also sustained.

The order of the board referred to by the court merely stated that June 15th had been set as the time for persons to come before the board to show why their assessments should not be raised, and directed the clerk to give notice by publication.

The forty-first, forty-second, forty-third, forty-fourth, and forty-fifth assignments are overruled for reasons given in discussing the seventh assignment. The forty-sixth and forty-seventh assignments are also overruled.

The forty-eighth and forty-ninth assignments raise the same issue as the twentieth assignment and are sustained.

The fiftieth relates to valuations of banks, and does not attack the finding of the court except on the ground that the evidence did not show what the real value of the banks was. This ground cannot be sustained, and the assignment will therefore be overruled.

The fifty-sixth assignment relates to an immaterial issue, and need not be considered.

The fifty-seventh, fifty-eighth, and fifty-ninth assignments attack the second and third conclusions of law filed by the trial court, and assert that the judgment is erroneous because the board acted substantially in accordance with the requirements of law. There is no merit in any of said assignments, and they are overruled.

We fail to find any assignments numbered 19 and 24.

All questions have been disposed of which, in our opinion may be material upon application for a writ of error by either party.

The judgment is affirmed.