## EARNEST et al. v. STANDEFER et al.

### No. 3888.

Court of Civil Appeals of Texas. Amarillo.

Oct. 12, 1932.

Bean & Duggan, of Lubbock, for appellants.

Loyd R. Kennedy, of Morton, for appellees.

HALL, C. J.

The appellant Earnest, joined by W. J. Odell and R. E. Sherrill, owning real property in Cochran county, instituted this suit against Tom C. Standefer, the tax collector of

Cochran county, and against the county judge and county commissioners to restrain them from attempting to collect from the plaintiffs excess taxes claimed to be due upon lands owned by and which had been rendered for taxation by plaintiffs, and to further restrain the defendants from collecting from plaintiffs taxes which had been levied to supplement the jury fund of the county in excess of 5 cents upon the $100 valuation and also taxes which had been levied in excess of 20 cents upon the $100 valuation for permanent improvements. They further prayed that the defendants be enjoined from using any of the proceeds of the sale of certain road bonds issued by the county for any purposes other than for the construction, maintenance, and operation of roads for the benefit of which said bonds had been voted and sold.

The court sustained a general demurrer to the plaintiffs' petition, and upon the refusal of plaintiffs to amend there was a judgment against plaintiffs; hence this appeal.

Omitting the formal allegations of the plaintiffs' first amended original petition, to which the general demurrer was sustained, the substance of the allegations we state as follows: That Earnest owned seven sections of land in Cochran county and personal property of the approximate value of $4,500; that Odell owned three sections of land in said county and personal property of the value of $130; that Sherrill owned four sections of land in said county. That they, in accordance with the statutes of Texas, had each rendered their property for taxation for the year 1931 at its reasonable market value. That Earnest rendered his lands at a valuation of $11,840 and his personal property at a valuation of $4,260, making a total of $16,100. That Odell had rendered his land at a valuation of $7,040 and his personal property at a valuation of $130, making a total of $7,170. That Sherrill had rendered his land for $7,360 and owned no personal property in Cochran county. That during May, 1931, the commissioners' court of said county convened and sat as a board of equalization, and as such board had the county clerk notify Earnest that they desired to raise the valuation of his property to $33,280 and to appear before the board at a stated time, etc. That said board ordered the clerk to notify Odell that they desired to raise the assessed value of his property to $13,230 and to notify Sherrill that they desired to raise the value of his property to $16,400. That in accordance with the notices the plaintiffs appeared on the date designated, to protest against the proposed increase in the assessed value of their properties, and introduced evidence before said board showing the character, quality, and quantity of real estate as well as the value thereof owned by them respectively, and further established by proof that the values placed upon their respective properties were fair and reasonable. That said com-

missioners' court, acting as a board of equalization, called no witnesses and heard no testimony other than that of the plaintiffs' witnesses upon the issue of the quantity and quality of the property involved. That said board wholly disregarded the testimony of plaintiffs' witnesses and arbitrarily and unlawfully fixed the value of Earnest's real estate at $28,020 and of his personal property at $5,260. Said board fixed the value of Odell's property at $13,100 and of his personal property at $130, and raised the value of Sherrill's real estate to $16,400 over the protest of the plaintiffs.

It is further alleged that such increase in the estimated values was illegal and void because said board of equalization did not equalize the improved lands in three classes and did not equalize the unimproved lands in three classes as required by law, but on the contrary pursued an arbitrary method, placing all lands in the county in three classes without regard to the fact that the part of the land in the county, particularly that in the vicinity of Morton and Bledsoe, the two principal towns in such county, is more valuable than lands in other parts of the county. That the lands in the vicinity of Morton and Bledsoe are devoted largely to agriculture and contain valuable improvements; whereas, most of the land in the remaining part of the county is suitable only for grazing purposes and has a market value of only about one-fifth as much as agricultural lands in the vicinity of Morton and Bledsoe. That in pursuance of their arbitrary scheme and classification, all lands in the county were divided into three classes, and one class was valued at $5 per acre, another at $7 per acre, and the third class at $12 per acre. That both improved and unimproved lands were placed in each class, no account being taken of the difference in the value of the improvements. That both grazing and agricultural lands were placed in the same class without taking into account the fact that the agricultural lands were far more valuable. They further alleged that plaintiffs' lands were largely suitable for grazing and on January 1, 1931, had a market value of not more than $3 to $5 per acre. That notwithstanding said fact, a great part of their real estate was value at $7 per acre and placed in the same class for taxation as other lands devoted to agriculture and which had a market value of $20 or more per acre. That lands belonging to plaintiffs having a market value of only $3 per acre were assessed at $5 per acre.

They further allege that prior to February 1, 1932, they tendered to Standefer as collector the taxes legally due upon their lands and personal property based upon the correct valuation of said property, which amount the tax collector refused to accept. They set out the tax rate for the county, state, and dis-

trict, and show the amount justly due from each plaintiff upon a legal valuation of their respective properties, and in their pleadings they make a continuing tender of whatever amount each may owe upon the property based upon the values at which they rendered the same.

They further attack the action of the commissioners' court in levying a tax of 25 cents on the $100 for county purposes; 15 cents on the $100 to supplement the jury fund; 15 cents on the $100 valuation for the road and bridge fund; 25 cents on the $100 for the erection of public buildings; and a total of 28 cents on the $100 to provide a sinking fund for and to pay the interest upon $200,000 of road bonds issued by the county. · They further allege that not more than 5 cents on the $100 was necessary to supplement the jury fund, but that 15 cents upon the $100 was levied so that two-thirds or more of the amount collected might be transferred by the commissioners' court from the jury fund to the general fund and to be used·to pay accounts against the county which could only be paid out of the general fund. They further allege that no more than 20 cents of the 25 cents upon the $100 valuation is necessary to provide for interest and a sinking fund upon the bonded indebtedness of the county and that the levy for the permanent improvements was void.

They further allege that the commissioners' court has appropriated a portion of the proceeds realized from the sale of the bonds to purchase road machinery, such as tractors and graders, for use upon the county roads and in the payment of bills for work upon the county roads which is an expenditure in no way connected with the purposes for which said bonds were voted and issued, and it is charged that the defendants will continue to make such illegal appropriations and payments unless restrained.

The petition is properly verified.

■■ The appellees have not favored us with a brief, and the judgment does not indicate upon what theory the court sustained the general demurrer. As against such demurrer the allegations in the petition must be accepted as true, and so considered we think the trial judge erred in holding the petition insufficient.

■ The tender of the amount due and the offer to do equity is sufficient. Ramey v. City of Tyler (Tex. Civ. App.) 45 S.W.(2d) 359; Patrick v. City of Taft (Tex. Civ. App.) 52 S.W.(2d) 297.

■ The fact that three property holders joined in the same action cannot be considered a misjoinder of parties plaintiff. Porter v. Langley (Tex. Civ. App.) 155 S. W. 1042; Brown v. First National Bank of Corsicana (Tex. Civ. App.) 175 S. W. 1122; Morris v. Cummings, 91 Tex. 618, 45 S. W. 383.

It is held in the case of Brundrett v. Lucas (Tex. Civ. App.) 194 S. W. 613, that where the commissioners' court sitting as a board of equalization hears testimony from the witnesses of the property owner, but does not call witnesses of its own, it must fix values according to the evidence actually introduced, and that it cannot disregard the evidence of the property owner's witnesses and fix values at a greater amount than was shown ·by the testimony of the owner's witnesses. A writ of error was refused. This is the rule in other jurisdictions. People ex rel. Glen Tel. Co. v. Hall, 130 App. Div. 360, 114 N. Y. S. 511; State ex rel. Kimberly-Clark Co. v. Williams, 160 Wis. 648, 152 N. W. 450.

■ R. S. art. 7211, among other provisions, requires the tax assessor to place opposite the rendition of each piece of property the amount which he thinks is the reasonable cash market value, in the event he is not satisfied with the value fixed by the owner at the time ·of rendition, and requires the commissioners' court to hear evidence and determine the true value of such property on January 1st. This requirement of the statute was not complied with, and the rule is that in the construction of tax laws, they are to be construed strictly in favor of the taxpayer.

This court held in Weatherly Independent School District v. Hughes (Tex. Civ. App.) 41 S.W.(2d) 445, that the levying of a discriminatory tax is tantamount to the taking of property without due process of law and amounts to legal fraud justifying the issuance of an injunction against the collection of such tax.

"Fraud is ground for relief by injunction in tax cases. A tax founded on a fraudulent assessment will be enjoined and this includes a valuation so excessive as to be constructively fraudulent whether made by local assessors or by a state board or by a reviewing board. * * * If the valuation is purposely made. too high through prejudice or a reckless disregard· of duty in opposition to what must necessarily be the judgment of all competent persons or through the adoption of a rule which is designed to operate unlawfully upon a class and to violate the constitutional rule of uniformity, the case is a plain one for equitable remedy by injunction. * * * Injunction also lies where certain property is intentionally and wrongfully assessed at a higher percentage of valuation than other property in pursuance of a system." 4 Cooley on Taxation (4th Ed.) § 1645.

The same rule applies when the board ·of equalization acts arbitrarily, resulting in overvaluation of one class of property, and the rule is further announced that fraud need not be shown where it is found that the assessing board did not follow the method prescribed by statute or otherwise adopted

some fundamentally wrong principle. Id. § 1651.

In Druesdow et al. v. Baker et al., 229 S. W. 493, 495, the Commission of Appeals said: "The decisions of the Tax Board in the matter of valuations are quasi judicial in their nature. This action is therefore a collateral attack upon the judgment of a quasi judicial tribunal. Such an attack cannot be justified in the absence of fraud, or something equivalent thereto; lack of jurisdiction; and obvious violation of the law, or the adoption of a fundamentally wrong principle or method, the application of which substantially injures complainant."

R. S. art. 7206, subd. 3, provides that the board of equalization shall equalize improved lands in three classes, the first class to embrace the better quality of lands and improvements, the second to embrace the second quality of lands and improvements, and the third class to include the lands of small or inferior improvements, and that the unimproved lands shall embrace first, second, and third classes. It is held that the failure of the board to comply with this statute entitles the taxpayer to relief. Randals et al. v. State (Tex. Civ. App.) 15 S.W.(2d) 715.

The allegation is that 25 cents upon a valuation of $100 had been levied for county purposes and that 15 cents had been levied for the benefit of the jury fund. The rule is that where the constitutional limit of 25 cents has been levied for general county purposes, the court cannot in addition thereto levy more than is actually necessary for jury purposes, especially when the intention is to transfer the surplus from the jury fund to the general fund of the county. Veltmann v. Slator (Tex. Civ. App.) 219 S. W. 530.

From what has been said it follows that the court erred in sustaining the general demurrer to the petition, for which reason the judgment is reversed and the cause remanded.