BEXAR COUNTY et al. v. HUMBLE OIL & REFINING CO.

No. 11841.

Court of Civil Appeals of Texas. San Antonio.

Sept. 15, 1948.

Rehearing Denied Oct. 13, 1948.

William N. Hensley and Austin F. Anderson, both of San Antonio, for appellants.

William N. Hensley, Criminal Dist. Atty., and Austin F. Anderson, H. G. Davis, and Charles R. Hancock, Asst. Criminal Dist. Attys., all of San Antonio, for appellant.

NORVELL, Justice.

The County Commissioners of Bexar County raised the assessed valuation of a refinery of the Humble Oil and Refining Company from $69,300 (the rendered value accepted by the county tax assessor-collector) to $105,720.

The trial judge concluded, as a matter of law, "that the action of the Board of Equalization for Bexar County for the year 1947, in raising the value of plaintiff's properties, was unlawful in that they failed to follow the requirements of Article 7212 of the Revised Civil Statutes of Texas, and that their acts were illegal."

Based upon this conclusion, the court granted a temporary injunction to the plaintiff below, Humble Oil and Refining Company, restraining the County Commissioners of Bexar County and other county officials, from attempting to enforce the collection of taxes based upon the $105,720 valuation.

The Commissioners and other defendants have appealed and present numerous points of error. The question of the correctness of the conclusion of law above stated is controlling upon this appeal, and we shall not attempt to discuss each of appellants' points presented, either separately or in groups. We have carefully examined the statement of facts and such facts as are set forth in this opinion are supported by sufficient evidence and the trial judge's finding or by the uncontradicted evidence, and appellants' points asserting the contrary are overruled.

Article 7211, Vernon's Ann.Civ.Stats., provides that whenever a person, firm or corporation renders its property under oath, the tax assessor, if satisfied that the property is correctly and properly valued, shall list the same accordingly. However, if the assessor is of the opinion that the rendered value is below the reasonable cash market value of such property, he shall place opposite the rendered value as given by the taxpayer, his estimate of the true market value, or, in certain cases, his estimate of the real or intrinsic value. Opportunity is afforded by the statute for the tax-payer to contest the raised valuation thus placed upon his property before the County Commissioners' Court.

Article 7212, Vernon's Ann.Civ.Stats., reads as follows:

"Boards may equalize

"The Boards of equalization shall have power, and it is made their official duty, to supervise the assessment of their respective counties, and, if satisfied that the valuation of any property is not in accordance with the laws of the State, to increase or diminish the same and to affix the proper valuation thereto, as provided for in the preceding Article, and when any Assessor in this State shall have furnished said Court with the rendition as provided for in the preceding Article, it shall be the duty of such Court to call before it such persons as in its judgment may know the market value or true value of such property, as the case may be, by proper process, *who shall testify under oath the character, quality, and quantity of such property, as well as the value thereof. Said Court, after hearing the evidence, shall fix the value of such property in accordance with the evidence so introduced* and as provided for in the preceding Article, and their action in such case or cases shall be final". (Italics ours.)

It is well settled in accordance with sound constitutional principles that the finality of the commissioners' judgment is dependent upon their complying with the statute and applicable constitutional provisions and safeguards. An unauthorized or arbitrary action may be set aside in a judicial proceeding. Johnson v. Holland, 17 Tex.Civ.App. 210, 43 S.W. 71, wr. ref.

The rendition of the Humble Oil and Refining Company of its refining plant in Bexar County had been examined by the Tax Assessor-Collector of Bexar County. Apparently, some minor changes in the rendition were made at the instance of the Tax Assessor-Collector, but the final rendered value of the plant for taxation purposes was placed at $69,300, and this valuation was accepted and approved by the Tax Assessor-Collector. It appears that in Bexar County the assessed valuation on all property is generally placed at forty per cent of the estimate of the cash market value.

The County Commissioners, sitting as a Board of Equalization, were of the opinion that the rendered value of the refining plant was not correct and should probably be raised. The Board issued notice of hearing to be held on August 29, 1947, at which time the agents, attorneys and witnesses of the Humble Oil and Refining Company appeared

At the outset of the hearing a difference of opinion developed as to its purpose and proper method of procedure. The Board announced, through its spokesman, that it had information which it had gathered and had prepared, which suggested that the rendered value of the property was too low, and offered the tax-payer an opportunity to present such evidence as it desired upon the question of value.

The only witness who testified as to the value of the refining plant involved was Nat Pace, the Humble's Plants' Valuation Engineer. Pace qualified as an expert as to valuations of properties, such as refining plants and the machinery used therein. He testified that this particular refinery was largely obsolete. It was a topping plant, first placed in operation in 1927, when octane requirements for gasoline were not so high as they are today, and that in order to market the products produced by the Bexar County plant they had to be blended with other products supplied from the main Humble plant at Baytown. Pace's testimony supported the rendered value and was to the effect that an assessed valuation of $105,720 would be highly excessive.

The Humble introduced a carbon copy of a statement furnished to it by J. Ben Stoner of the Stoner Appraisal Company, which company had been employed by the Commissioners' Court to aid it in appraising and equalizing property for tax purposes. This statement was offered "for the limited purpose of refuting the valuations, which he, Stoner, says he has recommended to the Court." The statement consisted of a list of various items, such as buildings, equipment and machinery appertaining to the refinery. Opposite these items were placed figures indicating estimates of the value of the items listed.

The trial judge found, and such finding is established by the evidence, that "it was never shown in the hearing before the Board of Equalization, or in the hearing before this Court, who made said copy of the Exhibit, or how said figures were arrived at, or what basis was used to arrive at or obtain said figures."

Consequently, the only sworn testimony before the Board as to values was that of Mr. Nat Pace, the witness for the Humble. As stated by the trial judge, this testimony adduced by the tax-payer "was undisputed and uncontradicted, and was the only testimony offered before said Board at said hearing and which conclusively showed that its rendition of properties in Bexar County was a correct rendition of the values of said properties."

However, on September 25, 1947, the Board notified Humble that the assessed valuation of the refining plant had been raised from $69,300 to $105,720. The Company then filed a formal protest with the Board and followed with this suit.

As above indicated, the rendered value of the property had been approved by the tax assessor-collector of the county. The rendered value was raised by the Board of Equalization and the record discloses that upon the hearing no sworn testimony was produced supporting the raise in assessed valuation. For that matter, we find no sworn competent testimony in the record made in the district court which supports the valuation set by the Board of Equalization. No one connected with the Stoner Appraisal Company, nor any one

else took the stand and swore that in his opinion the value proposed by the Board was approximately correct and gave reasons supporting his estimate. In regard to this matter, the trial judge found as follows:

"I find from the testimony in this case that the only purported information obtained by the Board as to the value of plaintiff's refining facilities, other than the sworn testimony of plaintiff's witnessses at the Board of Equalization hearing was not sworn testimony but only certain statements from an employee of the Stoner Appraisal Company who the testimony shows was not qualified to make an inventory and appraisal of the market value of the refining facilities, and that, therefore, such alleged or claimed information on the part of the Board of Equalization had no probative force as to the market value of said refining facilities."

The appellants do not contend that the Board's estimate of value is supported by sworn testimony, but assert that such estimate may be supported by "unsworn information furnished the Board covering said property and values, as well as matters within their own knowledge."

The statute requires that the Board's action in raising valuations above the appraisal approved by the tax assessor-collector shall be based upon testimony given under oath, when the tax-payer challenges such action and introduces sworn testimony supporting the values accepted by the tax assessor.

It has been held that this requirement (unless waived by the tax-payer) is mandatory. In Brundrett v. Lucas, Tex.Civ. App., 194 S.W. 613, 617, wr. ref., this Court in dealing wtih a similar situation, and speaking by Mr. Justice Moursund, said:

"Plaintiff having introduced the testimony of witnesses, the failure of the board to summon and examine witnesses of its own cannot be relied upon by plaintiff to invalidate the action of the board, but the board in such case must give the same effect to the testimony of plaintiff's witnesses as if they had been summoned by the board under the provisions of the statute.

"The action of the board in disregarding the testimony introduced, which testimony was not disputed, nor impeached by documentary evidence, was arbitrary and directly in the face of a mandatory statute, and furnished a sufficient basis for a suit in the district court to enjoin the collection of taxes upon the increased value thus made in the assessments."

Brundrett v. Lucas seems to be in accordance with the plain wording of the statute. The correctness of its holding has never been questioned by any later decision of the Supreme Court or of this Court. It therefore controls the decision in this case.

All of appellants' points are overruled and the order of the trial court is affirmed.