**WELLS INDEPENDENT SCHOOL DISTRICT et al., Appellants,**

v.

**ST. LOUIS SOUTHWESTERN RAILWAY COMPANY, Appellee.**

No. 7123.

Court of Civil Appeals of Texas.

Texarkana.

April 28, 1959.

Rehearing Denied June 2, 1959.

Stone & Stone, Wm. Emerson Stone, Jr., Jacksonville, for appellants.

M. M. Guinn, Rusk, for appellee.

FANNING, Justice.

The Board of Equalization of defendant school district raised the assessed valuation of the properties of plaintiff railroad in said school district for the year 1957 from $81,750 (the rendered value accepted by the tax assessor-collector of the school district) to $124,800. Plaintiff railroad duly protested, filed suit to enjoin the school district, its tax assessor-collector and its trustees, from collecting taxes from plaintiff for the year 1957 in excess of the value rendered by the railroad for that year. At the time of the filing of such suit and prior to February 1, 1958, plaintiff tendered $1,226.25 into the registry of the court, which sum was the correct amount of taxes according to the tax rate if based upon a valuation of $81,750. Plaintiff filed a motion for summary judgment with a supporting affidavit; defendants answered and filed supporting affidavits. Defendants, in response to plaintiff's request for admissions, admitted the major portions of plaintiff's request. The trial court, after a hearing, granted plaintiff's motion for summary judgment. Defendants have appealed.

The trial court filed findings of fact and conclusions of law. We quote from the trial court's findings of fact in part as follows:

"4. I find as a fact that the Plaintiff, St. Louis Southwestern Railway Company duly rendered under oath the property of said Railway Company for taxes for the year 1957 to the Tax Assessor and Collector of the Wells Independent School District and in such rendition placed a total value of such property at the sum of $81,750.00.

"5. I find as a fact that Mrs. Minnie K. Wisener as Tax Assessor and Collector of the Wells Independent School District accepted such rendition of the Plaintiff, St. Louis Southwestern Railway Company of Texas for taxes for the calendar year 1957. I further find as a fact that the Tax Assessor and Collector of the Wells Independent

School District accepted such rendition without having made any notation on said rendition to the effect that said rendition was out of line or any way improper or that said rendition did not correctly state the true facts relative to the St. Louis Southwestern Railway Company's property. I find as a fact that said rendition was the same as the 1956 rendition of Plaintiff's property which was accepted by the Defendant in 1956.

"6. I find as a fact that the Board of Equalization of the Wells Independent School District duly notified the Plaintiff, St. Louis Southwestern Railway Company to be present at a hearing to be held within said school district on the 26th day of August, 1957, for the purpose of equalizing property tax values of said Railway Company for the 1957 taxes claimed to be due said Wells Independent School District.

"7. I find as a fact that the St. Louis Southwestern Railway Company, Plaintiff, appeared on the appointed day of hearing of the proposed increase and that it appeared through its authorized agent, H. B. LaTourette, such appearance being made before a Board of Equalization of the Wells Independent School District of which J. I. Dean acted as Chairman. That H. B. LaTourette was duly sworn by said Board as a witness and protested any increase in value of said Plaintiff, St. Louis Southwestern Railway Company, and offered evidence and testimony to the effect that such property of the St. Louis Southwestern Railway Company should be valued for taxes for the year 1957 to said School District at the sum of $81,750.00. I further find as a fact that said Equalization Board heard no other evidence or testimony as to the value of such property other than that offered by H. B. LaTourette as Agent for the Plaintiff, St. Louis Southwestern Railway Company. I further find that said Agent

only offered testimony to show that the value of said property for taxes for the year 1957 was the sum of $81,750.00.

"8. I further find as a fact that subsequent to the hearing the Equalization Board of the Wells Independent School District proceeded to fix a valuation for tax purposes for the year 1957 on the properties of the Plaintiff, St. Louis Southwestern Railway Company, Plaintiff, located within the boundaries of the Wells Independent School District by the Board of Equalization on the 26th day of August, 1957, at said meeting.

"9. I find as a fact that on August 29, 1957 the Plaintiff through its agent, H. B. LaTourette, duly notified the Equalization Board of the Wells Independent School District of the Intention of the Plaintiff to protest such assessment and that said notice was contained in a letter dated August 29, 1957, which letter has been marked Exhibit A and attached to the Plaintiff's Original Petition in this cause to which reference is here made. I further find that such letter of protest was duly acknowledged by J. I. Dean, Chairman of the Board of Equalization of the Wells Independent School District for the year 1957.

"10. I further find as a fact that the Plaintiff, St. Louis Southwestern Railway Company on January 28, 1958, offered to and tendered to Mrs. Minnie K. Wisener as Tax Collector of the Wells Independent School District the sum of $1,226.25 in cash at the office of said Tax Assessor and Collector in Wells, Texas. I find that such tender was made at a time prior to the date when the taxes would have become delinquent and that said sum was offered in full payment of all taxes due the School District for the tax year 1957. I further find as a fact that said tender was in lawful currency of the United

States of America and that the Tax Collector of the Wells Independent School District refused to accept said money, but did agree orally that the tender was made by the Plaintiff, St. Louis Southwestern Railway Company of Texas. I also find as a fact that a valuation of $81,750.00 would result in a total tax of $1,226.25 when calculated upon the 1957 tax rate for the Wells Independent School District.

"11. I further find as a fact that the Plaintiff, St. Louis Southwestern Railway Company at the time it filed its suit on January 30, 1958 tendered into the registry of the District Court of Cherokee County, Texas the sum of $1,226.25 and that said sum of money still remains on deposit with the District Clerk of Cherokee County, Texas, said deposit having been made on January 30, 1958.

\*    \*    \*    \*    \*    \*

"14. I further find as a fact that the Plaintiff has suffered material injury and damage by reason of the increase of assessment from $81,750.00 to $124,800.00."

After carefully considering the pleadings, the affidavits of the parties, plaintiff's request for admissions and defendants' responses thereto, it is our opinion that the trial court's findings of fact are supported by the record.

Article 7211, Vernon's Ann.Civ.St., provides that whenever a person, firm or corporation renders its property under oath, the tax assessor, if satisfied that the property is correctly and properly valued, shall list the same accordingly. However, if the assessor is of the opinion that the rendered value is below the reasonable cash market value of such property, he shall place opposite the rendered value as given by the taxpayer, his estimate of the true market value, or, in certain cases, his estimate of the real or intrinsic value. Opportunity is afforded by the statute for the taxpayer to contest the raised valuation thus placed

upon his property before the County Commissioners' Court.

Article 7212, V.A.C.S., reads as follows:

"The Boards of equalization shall have power, and it is made their official duty, to supervise the assessment of their respective counties, and, if satisfied that the valuation of any property is not in accordance with the laws of the State, to increase or diminish the same and to affix the proper valuation thereto, as provided for in the preceding Article, and when any Assessor in this State shall have furnished said Court with the rendition as provided for in the preceding Article, it shall be the duty of such Court to call before it such persons as in its judgment may know the market value or true value of such property, as the case may be, by proper process, *who shall testify under oath the character, quality, and quantity of such property, as well as the value thereof. Said Court, after hearing the evidence, shall fix the value of such property in accordance with the evidence so introduced* and as provided for in the preceding Article, and their action in such case or cases shall be final." (Emphasis added.)

The nearest case we have found applicable to the situation in the case at bar is the case of Bexar County v. Humble Oil & Refining Co., Tex.Civ.App., 213 S.W. 2d 882, 883, wr. ref., n. r. e, opinion by Justice Norvell (now a member of the Texas Supreme Court), which case construes Articles 7211 and 7212, V.A.C.S. We quote from the court's opinion in said case as follows:

"It is well settled in accordance with sound constitutional principles that the finality of the commissioners' judgment is dependent upon their complying with the statute and applicable constitutional provisions and safeguards. An unauthorized or arbitrary action may be set aside in a judicial proceeding.

Johnson v. Holland, 17 Tex.Civ.App. 210, 43 S.W. 71, wr. ref.

\*    \*    \*    \*    \*    \*

"As above indicated, the rendered value of the property had been approved by the tax assessor-collector of the county. The rendered value was raised by the Board of Equalization and the record discloses that upon the hearing no sworn testimony was produced supporting the raise in assessed valuation. For that matter, we find no sworn competent testimony in the record made in the district court which supports the valuation set by the Board of Equalization. No one connected with the Stoner Appraisal Company, nor any one else took the stand and swore that in his opinion the value proposed by the Board was approximately correct and gave reasons supporting his estimate. In regard to this matter, the trial judge found as follows:

" 'I find from the testimony in this case that the only purported information obtained by the Board as to the value of plaintiff's refining facilities, other than the sworn testimony of plaintiff's witnesses at the Board of Equalization hearing was not sworn testimony but only certain statements from an employee of the Stoner Appraisal Company who the testimony shows was not qualified to make an inventory and appraisal of the market value of the refining facilities, and that, therefore, such alleged or claimed information on the part of the Board of Equalization had no probative force as to the market value of said refining facilities.'

"The appellants do not contend that the Board's estimate of value is supported by sworn testimony, but assert that such estimate may be supported by 'unsworn information furnished the Board covering said property and values, as well as matters within their own knowledge.'

"The statute requires that the Board's action in raising valuations above the appraisal approved by the tax assessor-collector shall be based upon testimony given under oath, when the tax-payer challenges such action and introduces sworn testimony supporting the value accepted by the tax assessor.

"It has been held that this requirement (unless waived by the tax-payer) is mandatory. In Brundrett v. Lucas, Tex.Civ.App., 194 S.W. 613, 617, wr. ref., this Court in dealing with a similar situation, and speaking by Mr. Justice Moursund, said:

" 'Plaintiff having introduced the testimony of witnesses, the failure of the board to summon and examine witnesses of its own cannot be relied upon by plaintiff to invalidate the action of the board, but the board in such case must give the same effect to the testimony of plaintiff's witnesses as if they had been summoned by the board under the provisions of the statute.

" 'The action of the board in disregarding the testimony introduced, which testimony was not disputed, nor impeached by documentary evidence, was arbitrary and directly in the face of a mandatory statute, and furnished a sufficient basis for a suit in the district court to enjoin the collection of taxes upon the increased value thus made in the assessments.'

"Brundrett v. Lucas seems to be in accordance with the plain wording of the statute. The correctness of its holding has never been questioned by any later decision of the Supreme Court or of this Court. It therefore controls the decision in this case."

Also in this connection see the case of Begert v. Alexander, Tex.Civ.App., 297 S.W.2d 895, wr. ref., n. r. e. (which cites Bexar County v. Humble Oil & Refining Co., supra), and which holds that the tax-payer plaintiffs were entitled to injunctive relief where the hearing before the board of equalization of the school district was not properly conducted and where taxpayers were not permitted a proper hearing but that the board had already placed arbitrary values upon the properties (in excess of their value) and refused to hear evidence of the owners as to the values of their properties.

In Republic Insurance Co. v. Highland Park Independent School Dist., Tex.Com. App., 129 Tex. 55, 102 S.W.2d 184, 187, it is stated:

"It is well settled that, when a rendition has been made by a property owner in the statutory manner, under oath, and accepted by the tax assessor without such action as provided in article 7211, *it is prima facie a correct rendition.* Even when the board itself is dissatisfied with the values fixed by the owner and gives notice of a raise, if at a hearing it adopts some arbitrary standard of valuation, or refuses to hear proof, or fails to adduce proof upon its own motion, so that an illegal value is fixed, *the rendition made by the owner prevails and becomes the basis upon which taxes are to be paid.* State v. Richardson, Tex.Com.App., 126 Tex. 11, 84 S.W.2d 1076, and authorities cited." (Emphasis added.)

Also in the case of Earnest v. Standefer, Tex.Civ.App., 54 S.W.2d 228, 230, it is stated:

"It is held in the case of Brundrett v. Lucas, Tex.Civ.App., 194 S.W. 613, that where the commissioners' court sitting as a board of equalization hears testimony from the witnesses of the property owner, but does not call witnesses of its own, it must fix values according to the evidence actually introduced, and that it cannot disregard the evidence of the property owner's witnesses and fix values at a greater amount than was shown by the testimony of the owner's witnesses. A writ of error was refused. This is the

rule in other jurisdictions. People ex rel. Glen Tel. Co. v. Hall, 130 App.Div. 360, 114 N.Y.S. 511; State ex rel. Kimberly-Clark Co. v. Williams, 160 Wis. 648, 152 N.W. 450.

"R.S. art. 7211, among other provisions, requires the tax assessor to place opposite the rendition of each piece of property the amount which he thinks is the reasonable cash market value, in the event he is not satisfied with the value fixed by the owner at the time of rendition, and requires the commissioners' court to hear evidence and determine the true value of such property on January 1st. This requirement of the statute was not complied with, and the rule is that in the construction of tax laws, they are to be construed strictly in favor of the taxpayer."

Appellants cite a court of civil appeals case, Exporters & Traders Compress & Warehouse Co. v. City of Marlin, Tex.Civ. App., 130 S.W.2d 860, wr. dis., judg. cor., which holds to the effect that members of a board of equalization may consider their own experience and knowledge of the particular property and of values generally in determining value at which property should be assessed. The affidavits of the three members of the Board of Equalization of the School District in question have averments to the effect that they did consider their own experience and knowledge of the property in question—such affidavits also clearly disclose that the only sworn evidence they had before them at the hearing in question was the testimony of plaintiff's agent LaTourette. The affidavits of each of the three members of the Board of Equalization also contain the following paragraph:

"Prior to the hearing the Board of Equalization had agreed among themselves that the rendered value of the property of the St. Louis Southwestern Railway of Texas should be raised from $81,750.00 to $124,800.00 in order to equalize the property with other raises

that had been made in the taxable year of 1957 and the prior tax years of 1956 and 1955."

In 40 Tex.Jur., Sec. 119, Taxation, p. 164, it is stated:

"Action by board on its own knowledge. May the board act on their own knowledge as to value, and will the court sustain such determination on evidence in the suit that the members of the board knew the property sufficiently well to form an independent opinion? While it has recently been held that this may be done—the court calling attention to the broad powers of the board (R.S. art. 7174) and the form of the oath taken by members (R.S. art. 7206)—*the cases so holding do not cite earlier and well-considered decisions to the contrary.*" (Emphasis added.)

Cited in support of the italicized portion of Texas Jurisprudence, supra, are the following cases, Earnest v. Standefur, supra, Tex.Civ.App., 54 S.W.2d 228, and Brundrett v. Lucas, supra, Tex.Civ.App., 194 S.W. 613, wr. ref.

It is our opinion that the $81,750 sworn rendition of plaintiff for the year 1957, accepted by the tax assessor-collector of defendant school district, was prima facie a correct rendition. The sworn testimony of plaintiff's agent LaTourette to the effect that $81,750 was the value of plaintiff's properties for the year 1957 in defendant school district (in addition to the sworn 1957 rendition of plaintiff's properties in question) was the only sworn evidence before the Board of Equalization at the hearing in question and in the absence of sworn controverting evidence the Board was not authorized to disregard the sworn testimony of LaTourette and the prima facie correct 1957 sworn rendition of plaintiff. Article 7212, V.A.C.S., supra, expressly provides that the Board of Equalization should not fix values until *"after hearing the evidence"* and *"in accordance*

*with the evidence so introduced."* It is clear that the Board of Equalization under the facts in this case did not follow the provisions of Article 7212, V.A.C.S., but instead based their raise in the assessment from $81,750 to $124,800, on their own knowledge and experience, which was not sworn to and placed in the record in the form of evidence and upon their agreement among themselves, made prior to the hearing, to make said raise, as shown in the hereinbefore quoted portion of the affidavits of the three members of the Board of Equalization. We therefore hold that the act of the Board in raising the assessment in question from $81,750 to $124,800 was contrary to Article 7212, V.A.C.S., and was illegal.

■ We have carefully considered the record and have reached the conclusion that there were no genuine material issues of fact in the case and appellants' various points with respect to these matters are respectfully overruled.

Appellants also contend to the effect that plaintiff was not entitled to relief from the assessment because it did not establish and could not establish that it was substantially injured by the valuation fixed by the Board of Equalization. The assessment was raised from $81,750 to $124,800, which was more than a 50% increase, and this raise would increase plaintiff's taxes from $1,226.25 to $1,872. When this raise was made by the Board of Equalization in an illegal manner and contrary to Article 7212, V.A.C.S., we think the facts in this case show substantial injury to appellee as a matter of law. In this connection see the case of Whelan v. State, 155 Tex. 14, 282 S.W.2d 378, 384, wherein the court after stating that if the evidence there in question would have re-sulted in a reduction of petitioner's taxes by ⅙ of the taxes due by Whelan to the County, stated:

*"It can hardly be questioned or doubted that on the record before the court the proffered evidence, if undisputed, would have shown substantial injury as a matter of law in that petitioners' taxes were excessive to the extent indicated."* (Emphasis added.)

■ Appellants also contend to the effect that plaintiff waived any defects, if any, in the proceeding before the Board of Equalization by reason of the tender of the taxes in question. The record undisputedly shows that plaintiff tendered the sum of $1,226.25, which was the correct amount of taxes according to the tax rate based upon a valuation of $81,750. The plaintiff tendered only the amount it admitted to be just and legal and to that extent only can the waiver be properly extended and such waiver we think could not properly be extended beyond the amount which was tendered or offered to be paid. In this connection see Bell v. Turkey Independent School Dist., Tex.Civ.App., 214 S.W.2d 834, wr. ref., n. r. e., and authorities cited therein, and also see State v. Hoffman, 109 Tex. 133, 201 S.W. 653. We hold that plaintiff did not waive its right to complain of the illegal raise of the assessment of its property by more than 50% by plaintiff's tender of the correct amount actually due under the law and the facts in this case.

Each and all of appellants' points have been carefully considered and are respectfully overruled.

The judgment of the trial court is affirmed.