**OWENS–ILLINOIS, INC., Appellant,**

v.

**LITTLE CYPRESS–MAURICEVILLE INDEPENDENT SCHOOL DISTRICT, Appellee.**

No. 7342.

Court of Civil Appeals of Texas, Beaumont.

April 27, 1972.

Rehearing Denied May 25, 1972.

---

Orgain, Bell & Tucker, Beaumont, for appellant.

Stephenson & Thompson, Orange, for appellee.

KEITH, Justice.

The appeal is from an order sustaining a "plea in abatement" and dismissal of a suit filed by Owens-Illlinois, Inc., challenging the assessment of its properties for taxation in the school district.

We summarize the allegations found in the verified original petition wherein plaintiff sought injunctive relief, both prohibitory and mandatory, against the members of the Board of Equalization and the District: (a) The taxpayer owned real and personal property within the district and duly rendered the same for taxation for the year 1971 by the filing of its sworn rendition with the tax assessor-collector of the district. (b) No changes or notations were made thereon at the time the same was filed. (c) Thereafter, on October 18, 1971, the taxpayer was notified in writing that the valuations had been increased from that in its rendition form and was advised of its right to protest the increase before the Board of Equalization of the District.

(d) On October 27, at the time and place designated for the protest, the taxpayer appeared with counsel and offered sworn testimony supporting its rendition. (e) The Board of Equalization did not hear any other evidence, under oath or otherwise. (f) The Board of Equalization rejected the protest of the taxpayer, confirmed the increased valuation which had been the subject of the protest, and increased taxpayer's valuations from $29,000,000 to $58,000,000 (both totals being rounded off for convenience). (g) At the conclusion of the hearing on October 27, counsel for the taxpayer requested notification of the action of the Board of Equalization be given as soon as possible. (h) The Board entered an order of adjournment on November 4, 1971, but notice was not given then to Beaumont counsel who had appeared and requested the notice. (i) The notification was in the form of a letter addressed to owner's home office in Toledo, Ohio. (j) Although the letter was dated November 8, 1971, after the adjournment of the Board, it was postmarked November 9 and was received on November 12. Taxpayer filed this suit on November 16 upon Tuesday following receipt of the notice in Ohio on Friday.

The pleading of the taxpayer seeking the relief is complex, prolix, and frequently conclusory as well as being argumentative. Nevertheless, it did tender issues as to the validity, vel non, of the assessment upon which the tax was levied upon its properties. The original petition alleged that the defendants "have adopted, applied, used and enforced an arbitrary and fundamentally erroneous, highly discriminatory, wrongful and illegal system, scheme, device, method and formula of taxation and valuation and assessment in purportedly valuing and assessing Plaintiff's properties in the District for taxation and in collecting taxes thereon" followed by six different specifications. As noted earlier, the pleading sought injunctive relief in the form of an ex parte temporary restraining order and a temporary injunction after hearing. The temporary restraining order

was denied and a hearing was set upon the application for temporary injunction.

On December 9, 1971, the date set for the hearing on the application for the temporary injunction, District appeared and filed a "plea in abatement" which alleged, inter alia, "That the relief sought by this Plaintiff is moot, in that the acts sought to be prohibited and enjoined have already transpired and were completed prior to the filing of Plaintiff's Original Petition." This was followed by allegations that all acts done by the defendants after the suit had been filed (i. e., approval of tax roll, sending out of tax bills, collections of taxes, etc.), "involved no discretion" upon the part of the officials of District. The "plea in abatement" further contended that the petition "is not in the nature of a direct attack upon the proceedings leading to the imposition of a tax burden on the property but instead is in the nature of a defense to the collection of the taxes by the school district."

Upon the hearing upon the plea in abatement, it was established that the Board of Equalization, apparently on or before November 23, 1971, signed and finally approved the tax rolls. Upon that date, the Board of Trustees of District formally approved the tax rolls, discharged the Board of Equalization, and levied a tax of $1.60 per one hundred dollars' valuation. Shortly thereafter, tax bills based upon the approved tax roll were sent out and at the time of the hearing upon the plea in abatement, something approximating twenty thousand dollars in taxes had been collected upon the approved roll for the year 1971.

At the conclusion of the hearing on the "plea in abatement", the trial court sustained the plea and dismissed plaintiff's suit and the appeal has been duly perfected.

■ The "plea in abatement" urged by District and sustained by the court finally disposed of the entire litigation as presented by the pleadings of the taxpayer. The plea was not, in truth and in fact, a plea in abatement. It was either a plea to the jurisdiction, insofar as it went to plaintiff's prayer for temporary relief; or it was a plea in bar, insofar as it sought to defeat plaintiff's claims upon the merits of the controversy. The distinction between the three pleas was set out by Chief Justice Calvert in his usual crisp style in Texas Highway Department v. Jarrell, 418 S.W. 2d 486, 488 (Tex.Sup.1967) in this manner:

> "As applied to a pending claim for relief or cause of action, a plea to the jurisdiction, if sustained, would require a dismissal; a plea in abatement, if sustained, would require an abatement of the claim or cause of action until some obstacle to its further prosecution was removed, Life Ass'n of America v. Goode, 71 Tex. 90, 8 S.W. 639, at 640; and a plea in bar, if sustained, would require a judgment that the claimant take nothing. Kelley v. Bluff Creek Oil Co., 158 Tex. 180, 309 S.W.2d 208, at 214."

The judgment below was that "the plea in abatement of the defendants be and the same is hereby in all things sustained and the suit of [plaintiff against defendants] be and the same is hereby dismissed at plaintiff's cost."

■ As Justice Garwood observed in Kelley v. Bluff Creek Oil Company, 158 Tex. 180, 309 S.W.2d 208, 214–215 (1958), "The practice of misnaming a plea in bar in order to procure a preliminary trial as if the plea were one in abatement is confusing and not to be encouraged." See also Smith v. City of Dallas, 404 S.W.2d 839, 842 (Tex.Civ.App., Dallas, 1966, no writ).

The District places primary reliance upon two unreported cases by this court, Nos. 6532 and 6533, both decided on October 3, 1962, in which the Supreme Court refused the applications for the writ of error with the notation "no reversible error." The single authority cited in each instance was Lincoln v. Commissioners' Court, 72 S.W.2d 701 (Tex.Civ.App., San Antonio,

1934, error dism.). In *Lincoln*, a general demurrer was sustained to plaintiff's petition and the action was upheld on appeal upon two grounds: (1) the action sought to be remedied for the year involved had already transpired and the governmental agency charged with that duty had "long since performed that duty and been dissolved by operation of law" (72 S.W.2d at p. 702); and (2) the allegations to similar action which might be taken in the future were "too vague and indefinite to support the extraordinary remedy" sought.

We do not deem it either necessary or appropriate to discuss at length the two unreported decisions. The dissimilarity in relief sought is sufficient to distinguish the holdings. Plaintiffs in the unreported cases sought relief only against the members of the Board of Equalization and did not seek to enjoin the collection of taxes upon the assessments made the basis of their complaints. There, all of the relief sought had become moot; here, issues remained between the parties which had not been mooted by the adjournment of the Board of Equalization.

We reject District's contention that plaintiff's suit was not a direct attack but "instead is in the nature of a defense to the collection of the taxes by the school district." The suit was filed three days after the taxpayer received notice of the increased assessment; it was filed before the tax rolls had been finally approved by the Board of Equalization; and it was filed before the Board of Trustees had levied the taxes upon plaintiff's property. District was not authorized to collect any taxes until the rolls had been completed and the tax levied by its Board of Trustees; and the taxes so levied, even upon an unchallenged roll, did not become delinquent until February 1, 1972. Furthermore, although penalties and interest upon the taxes lawfully levied upon property upon the 1971 tax roll began to accrue on February 1, 1972, suit for such delinquent taxes is not authorized by law until July 1, 1972. See Atlantic Richfield Co. v. War-

ren Ind. Sch. Dist., 453 S.W.2d 190, 201, fn. 5 (Tex.Civ.App., Beaumont, 1970, error ref. n. r. e.).

We note in passing that there was an unusual delay in holding the hearings before the Board of Equalization. The hearing before the Board was held nearly five months later than contemplated by law. Art. 7218, Vernon's Ann.Civ.St., provides that the assessor "shall submit all lists of property rendered to him . . . on the first Monday in June or as soon thereafter as practicable, . . ." Although taxes for the year 1971 became due and payable on October 1, 1971 (Art. 7255, V.A.C.S.), we find that the Board of Equalization was still in session twenty-seven days after the taxes were payable and did not complete its work until about November 23, fifty-three days after the taxes became due and payable.

We had occasion to point out in the *Atlantic Richfield Case*, supra, that even when the taxing authorities proceed in accordance with the timetable set out in the statutes, "[t]he time within which an aggrieved taxpayer can bring the direct attack against an illegal assessment of taxes is, by the very nature of the taxing procedure, severely limited . . ." (453 S.W.2d at p. 195)

The present Chief Justice in State v. Whittenburg, 153 Tex. 205, 265 S.W.2d 569, 572 (1954), said:

"It is now well settled that the assessment of property for tax purposes is a quasi-judicial function of boards of equalization and that no attack on valuations fixed by such boards can or will be sustained in the absence of proof of fraud, want of jurisdiction, illegality, or the adoption of an arbitrary and fundamentally erroneous plan or scheme of valuation. . . . Moreover, when their official action is attacked it will be presumed that such boards discharged their duties as public agencies according to law and acted in good faith. (citations omitted)"

■ Until the Board of Equalization completed its work and was discharged by the Board of Trustees and until the Board of Trustees approved the tax roll and levied taxes upon the assessments so made, the plaintiff taxpayer was entitled to rely, as a matter of law, upon the presumption that such "boards discharged their duties as public agencies according to law." Until those events occurred, there was no occasion for the taxpayer to seek any relief by way of injunction or mandamus. After such events had occurred, and only then, was the taxpayer aggrieved.

■ An aggrieved taxpayer who asserts that a taxing agency has adopted a fundamentally erroneous and arbitrary plan of taxation which increases his share of the tax burden has two remedies available. He may make a direct attack by availing himself of the remedies of mandamus and injunction to prevent a taxing authority from putting such a plan into effect. See, e. g., City of Arlington v. Cannon, 153 Tex. 566, 271 S.W.2d 414, 416 (1954). In such instances, he is required to prove substantial injury as a result of the adoption of the illegal plan of assessment. Id. 271 S.W.2d at p. 417.

■ Or, the taxpayer may allow the taxing agency to put the plan into effect and challenge the assessment in defense of a suit to collect the delinquent taxes based upon the assessment. In such instance, he must then assume the onerous burden of proving that his taxes, by virtue of the adoption of the plan, are excessive or substantially higher than they would have been had the taxing agency followed the statutory and constitutional provisions governing the levy. Whelan v. State, 155 Tex. 14, 282 S.W.2d 378, 383 (1955); State v. Federal Land Bank of Houston, 160 Tex. 282, 329 S.W.2d 847, 850 (1959).

The defense of the tax suit constituting a collateral attack upon the assessment rolls places the more onerous burden on the taxpayer because, as was said in *Federal Land Bank Case,* supra:

"Once such a plan is put into effect, the litigant may defeat the recovery of taxes only to the extent that they are excessive; and he must prove the excessiveness. City of Arlington v. Cannon, 1954, 153 Tex. 566, 271 S.W.2d 414."

See also City of Orange, Texas v. Levingston Shipbuilding Co. (5th Cir. 1958), 258 F.2d 240, 248.

■ At the time plaintiff instituted its suit (thereby availing itself of the remedies of injunction and mandamus to prevent the illegal assessment and collection of taxes upon its properties), the plan had not been put into effect by District insofar as plaintiff's properties were concerned. We hold, as a matter of law, that the suit was timely filed in this case and that the same constituted a direct attack upon the assessment of plaintiff's properties.

Insofar as plaintiff sought relief from the imposition and collection of taxes upon its properties based upon an illegal assessment, the suit was not moot at the time of the hearing below. In Superior Oil Co. v. Sinton Independent School Dist., 431 S.W.2d 383 (Tex.Civ.App., Corpus Christi, 1968, no writ), suit was filed two days after the preliminary adjournment of the Board of Equalization and nearly a month before the rolls were corrected and approved by the Equalization Board. The court held that the suit was a direct attack upon the District's tax plan and properly maintainable.

In Briscoe Ranches, Inc. v. Eagle Pass Ind. Sch. Dist., 439 S.W.2d 117, 118, 119 (Tex.Civ.App., San Antonio, 1969, error ref. n. r. e.), the trial court originally granted an ex parte order restraining the district and its officials from making up, examining, or approving the general tax rolls, from using values set by the Board of Equalization, from assessing taxes upon appellants' properties, and from collecting any taxes based on such valuations. Upon a hearing on the application for the temporary injunction, the relief sought was denied and the restraining order set aside.

After the temporary order expired, the district immediately approved its tax rolls and issued tax bills. It then filed a motion to dismiss the appeal because of mootness, asserting that "the acts sought to be enjoined have been performed," bills had been sent to all taxpayers, and "[a] substantial part of the taxes have now been paid." The district asserted that it was "too late to set aside the scheme or plan of taxation, in that it has now been fully implemented and put in operation."

The San Antonio court, speaking through Chief Justice Barrow, disagreed, saying: "These appellants . . . are entitled to show that the taxes on their land have been illegally assessed and to secure relief in the event they prevail at the trial on the merits." We apply the same rule to the case at bar. Plaintiff is entitled to its day in court. See generally, "Remedies Available to a Victim of a Wrongful Ad Valorum Property Tax Assessment," 33 Tex.Law Rev. 1075 (1955).

■ The attack made by the taxpayer in our case was direct, not collateral. State v. Whittenburg, supra (265 S.W.2d at p. 573). District's effort to thrust the more onerous burden upon the taxpayer under the rationale of City of Arlington v. Cannon, supra (271 S.W.2d at p. 416), is without support in either fact or law. Having challenged the assessment in a direct attack, plaintiff's right to the relief sought cannot be defeated by District's acceptance of taxes from others. If District chose to accept such taxes from others, it did so without prejudice to plaintiff's rights. Atlantic Richfield Co. v. Warren Ind. Sch. Dist., supra (453 S.W.2d at p. 196).

It is apparent that the trial court erred in dismissing plaintiff's suit in its entirety, for which reason the judgment must be reversed and the cause remanded for a trial upon the merits. In so doing, we express no opinion upon the merits of the cause.

■ We do say, in passing, that a hearing upon a temporary injunction is a poor substitute for a trial upon the merits of such an action as is represented by this case. Southwest Weather Research, Inc. v. Jones, 160 Tex. 104, 327 S.W.2d 417, 421 (1959); Briscoe Ranches Case, supra (439 S.W.2d at p. 120). See also West Texas Gulf Pipe Line Company v. Hardin County, 159 Tex. 374, 321 S.W.2d 576, 577 (1959).

After a trial upon the merits, the trial and appellate courts may grant the full relief to which the parties are entitled under the facts and the law. Superior Oil Case, supra, and Atlantic Richfield Case, supra.

Reversed and remanded.

## ON MOTION FOR REHEARING

Able counsel for the District, true to the traditions of effective advocacy, takes us to task in the motion for rehearing because of some of the language used in the original opinion. District contends, inter alia, that we erred factually in at least two respects, our statement under subsection (e) with reference to the allegations as to the hearing of evidence before the Board of Equalization, and the increase of the assessment over the rendition. As to the latter, we confirm that our recitation of the amounts was correct but that we overlooked noting that the *rendition* was not upon a basis of one hundred percent of the actual valuation but upon a percentage thereof, while the *assesment* purported to be at an actual one hundred percent valuation. The correction noted does not alter the result but is recognized because of the District's insistence.

We find difficulty following District's challenge to the first statement noted, so we reproduce the complaint in full:

"(a) Under (e) on page 2 of the opinion, the Court says that the Plaintiff taxpayer alleged the Board of Equalization did not hear any other evidence under oath or otherwise. The allegations in Paragraph No. 7 of Plaintiffs Original Petition alleged that in violation of

484

the Constitution of the United States and the State of Texas, the Board of Equalization purportedly held a further additional hearing of which Plaintiff was given no notice or opportunity to attend. The evidence showed no other hearing was held."

We have again combed the record and, as best we understand the actual sequence of events, the taxpayer had witnesses present who were sworn and gave testimony before the Board of Equalization. The tax assessor was also sworn but the minutes do not reflect that he testified. Under these circumstances, it is difficult to understand District's insistence that this correction be made. See in this connection, Wells Ind. Sch. Dist. v. St. Louis Southwestern Ry. Co., 324 S.W.2d 442 (Tex.Civ.App., Texarkana, 1959, error ref. n. r. e.).

District challenges our "timetable" with reference to the sequence of events in the levy and collection of taxes by independent school districts, and especially our reliance upon the statutes applicable to the collection of county taxes. It insists that we erred in the instant case, as well as in our prior decision in Atlantic Richfield Co. v. Warren Ind. Sch. Dist., 453 S.W.2d 190, 201, fn. 5 (Tex.Civ.App., Beaumont, 1970, error ref. n. r. e.).

Appropriately enough, counsel calls to our attention the provisions of §§ 23.91–23.98, Texas Education Code, V.T.C.A., and the reference in § 23.91 to the powers and duties of the assessor-collector of independent school districts—those "that are conferred by law upon the assessor and collector of taxes in and for any incorporated city, town, or village." We note also that § 23.93, subdivision (c), requires the officer so appointed to "assess the taxable property . . . within the time and in the manner provided by existing law." Unfortunately, the Education Code does not otherwise specify what "existing law" is to be followed; and, we are familiar with the rule that in the assessment of city

taxes, the provisions of the city charter control insofar as not inconsistent with state law. . Houston Crane Rentals, Inc. v. City of Houston, 454 S.W.2d 216, 218 (Tex.Civ.App., Houston—1st, 1970, error ref. n. r. e.).

Art. 7345d–1, V.A.C.S., provides that incorporated cities and towns and independent school districts having their own assessor-collector of taxes and Boards of Equalization, etc., "shall have the right by ordinance, order or resolution properly enacted, passed, and entered to avail themselves of this law." The only reference to *any* statute in our record is to be found in the rendition sheet of the taxpayer which was sworn to before District's assessor-collector.

It is headed "School District Inventory of Property" and recites that the property was "Rendered for Assessment of Taxes for the year 1971" by an agent of the taxpayer to the individual who was assessor-collector of taxes for the district. Immediately before the description of the property we find these words: "(Assessed, if unrendered, under Articles 7205 and 7218, Revised Statutes 1925.)"

Art. 7205 is a part of Title 122 and not a part of the Education Code, nor is it a part of Chapter 5, Title 28, relating to taxation by cities and towns. The reference in the very sheet accepted by the tax assessor-collector in this instance would indicate that he was proceeding under the law governing the assessment of taxes by county officials: Art. 7205 makes it the duty of the county assessor-collector of taxes to list unrendered property, while Art. 7218 requires him to "submit all the lists of property rendered to him prior to the first Monday in June to the board of equalization."

Counsel for the District, pointing to Art. 7345d–1, authorizing independent school districts to avail themselves of the provisions of Title 122, says: "There is nothing in the record showing that Little Cypress-Mauriceville has ever availed itself of this

law." Such is true, but, we say with equal validity, the *only* reference to *any statute* anywhere in our record indicates that it is actually "availing" itself of at least two of the provisions of Title 122.

Remaining convinced that the order sustaining District's plea in abatement was erroneously entered, we adhere to the conclusions expressed in our original opinion. District's motion for rehearing is overruled.