SIERRA BLANCA INDEPENDENT
SCHOOL DISTRICT et al.,
Appellants,

v.

SIERRA BLANCA CORPORATION et al.,
Appellees.

No. 6393.

Court of Civil Appeals of Texas,
El Paso.

Oct. 9, 1974.

Rehearing Denied Oct. 30, 1974.

Calhoun, Morton & Deason, Ronald R. Calhoun, Charles A. Deason, Jr., El Paso, for appellants.

Peticolas, Luscombe, Stephens & Windle, W. C. Peticolas, El Paso, for appellees.

Liddell, Sapp, Zivley & Brown, W. Robert Brown, Houston, amicus curiae.

## OPINION

WARD, Justice.

There are twenty-five plaintiffs and they are the owners of various classes of real estate subject to ad valorem taxes within the Sierra Blanca Independent School District. They have sued for injunctive relief restraining the School District from putting into effect a tax plan adopted for the year 1973. After a hearing was held for a temporary injunction, all parties, in the interest of time and expense, entered into a stipulation that the evidence presented was to be considered by the trial Court as if presented to the Court without a jury on the final trial of the case. The Court thereupon permanently enjoined the School District from putting the tax plan into effect and ordered the District's tax assessor and collector to reevaluate all properties on an equal and uniform basis. After findings of fact and conclusions of law were prepared and filed, the District has perfected its appeal. We affirm in part and in part we reverse.

The present controversy had its inception in the spring of 1973 when the Texas Education Agency recommended that accreditation of the Sierra Blanca Independent School District be discontinued because in the opinion of the Agency there existed an inadequate financial support for the School District. The District after various appeals and discussions succeeded in having the Texas Education Agency change its original position and the school's accreditation was reinstated. The School District was placed on probation for one year, on the condition that the District would reassess all properties within its jurisdiction at full market value in order that there would be a proper financial support for the school system. On June 26, 1973, a tax committee was appointed by the Board of Trustees of the District to study and make recommendations as to valuations. This committee met frequently until the end of August, 1973, at which time its recommendations as to valuations were submitted in written form to the Board of Trustees and to Mrs. Avelen Brandon, the Tax Assessor-Collector for the School District. The Board of Trustees then appointed a Board of Equalization. The

Board of Equalization met on October 15th and on October 17th and again on October 24, 1973, and at the last hearing the plaintiffs were present with their attorneys and other representatives. At this meeting, the Board of Equalization permitted an extensive discussion and argument on behalf of the plaintiffs as to their complaints and they were further permitted to present to the Board a very detailed alternative plan. On October 27th, the Board· of Equalization denied the plaintiffs any relief and adopted the valuations which had been made and presented to it by the tax committee. On October 30th, the Board of Trustees of the School District met and the tax rolls submitted by the Board of Equalization were adopted and the tax rate fixed. Then on November 8, 1973, just five days before the Appellees' suit was filed, the Board of Trustees met again and rescinded the tax rate fixed at the October 30th meeting and adopted another tax rate for the year 1973.

■ The trial Court concluded that the plaintiffs' suit was a direct attack on the plan of assessment and that these taxpayers need only show substantial injury to prevail. This is the subject of the Appellants' first point, which contends that the plaintiffs' suit was not a direct attack but was collateral in nature as suit was filed by the plaintiffs after the District's tax plan had been put into effect. The District insists that the taxpayers must assume the more onerous burden required under a collateral attack. There, the litigant may defeat the recovery of taxes only to the extent that they are excessive; and he must prove excessiveness. City of Arlington v. Cannon, 153 Tex. 566, 271 S.W.2d 414 (1954). Much has been written on the subject and there is a difference of opinion as to what is and what is not a direct or collateral attack. No useful purpose is accomplished by discussing the authorities here. It is sufficient for us to say that the results reached in Atlantic Richfield Company v. Warren Independent School District, 453 S.W.2d 190 (Tex.Civ.App.—

Beaumont 1970, writ. ref'd n. r. e.), and repeated in Owens-Illinois, Inc. v. Little Cypress-Mauriceville Independent School District, 481 S.W.2d 477 (Tex.Civ.App.— Beaumont 1972, no writ), are the most equitable. This suit was filed promptly within five days after the Board of Trustees had rescinded the tax rate fixed on October 30, 1973, and had adopted the final tax rate. The timetables discussed in those two cases by Justice Keith regarding the sequence of events in the levy and collection of taxes are similar to the sequence of events of the present case.

■ In that regard, our record is silent as to whether or not this School District had adopted an order under the terms of Art. 7345d–1, Vernon's Tex.Rev.Civ.Stat. Ann. Thus we do not know if the timetable established by Title 122 and applying to the County assessor-collector has by order been made applicable to this School District. See the discussion in the Owens-Illinois, Inc. case, 481 S.W.2d, at 484; and 51 Texas L.Rev. 885, at 888. Regardless of that, it is immaterial to this case. The tax rolls were not completed under the record before us. According to the testimony of Mrs. Brandon, she was still in the process of considering the affidavits from the ranch owners who were petitioning for a reduction of their taxes under the terms of Article VIII, § 1-d, Texas Constitution Vernon's Ann.St., which in general provides for a standard of assessment other than market value. She further testified that for all ranchers who qualified she would afford them an additional 50% reduction in their valuation. In view of this and in view of the prompt action of the taxpayers in instituting their suit after the final tax rate had been adopted, and in diligently prosecuting this suit, we hold that this is a direct attack. The first point of error is overruled. We have discussed this point at some length due to the insistence of the Appellants in their argument. This determination however as it applies to the complaints of the various taxpayers becomes purely academic as seen later by this opinion.

The plaintiffs-taxpayers fall into three general classes. They are the ranch owners, the town of Sierra Blanca property owners and the Sierra Blanca Corporation. Their complaints as to the tax plan while overlapping somewhat because of their different positions are fourfold: 1. The ranch lands are overvalued and are discriminated against; 2. The railroads, pipelines and public utilities are undervalued; 3. The properties within the town of Sierra Blanca are overvalued; and 4. The properties of the Sierra Blanca Corporation are overvalued.

The Appellants attack the trial Court's findings as to the ranch lands by "no evidence" points as to findings that discrimination existed in the tax plan as to these lands and that they were systematically overvalued. We will consider only the evidence and the inferences therefrom tending to support the trial Court's findings. Garza v. Alviar, 395 S.W.2d 821 (Tex.Sup. 1965).

The School District consists of some eleven hundred sections of land, almost all of which is ranch land. The District is divided by Interstate Highway 10 which runs east and west. Some two-thirds of the area of the District lies north of the highway. On a 100% valuation, all of the ranch land lying north of the highway was valued at $30.00 an acre, all of that lying to the south was valued at $20.00 an acre. The trial Court in its findings found that these valuations did not take into consideration the location, topography, soil type, leases or sales of similar lands; and that such valuation was arbitrary. The Court concluded that this part of the plan of taxation adopted by the District was arbitrary and discriminatory and illegal in that valuing the lands north of Interstate 10 at $30.-00 an acre and valuing the lands south of Interstate 10 at $20.00 an acre without reference to the actual cash market value of the respective properties constituted an arbitrary and illegal fixing of a line in order to determine value when such line had no relation to value but was purely arbitrary;

that the establishment of such an arbitrary line had the effect of discriminating against the ranch taxpayers owning similar properties on the north and favoring ranch taxpayers owning similar properties on the south; and that those ranch landowners on the north would pay substantially more taxes than the ranch owners owning similar properties south of Interstate 10.

■ The challenge on the basis of discrimination made by the taxpayers to this portion of the plan of taxation was the constitutional one that it violated Article VIII, § 1, of the Texas Constitution, which provides that taxation shall be equal and uniform and that all property shall be taxed in proportion to its value. While the evidence is conflicting, the taxpayers offered evidence that Interstate 10 had no relation to the true value of the ranch land, there being testimony that some ranches to the south of the line were more valuable than ranches to the north. Without further discussion, we can say that the evidence established the adoption of a formula for assessing property which contravened the constitutional mandate and to this extent the taxation plan adopted was arbitrary, discriminatory and illegal. Hawthorne v. Hillin, 463 S.W.2d 266 (Tex.Civ.App.—Waco 1971, no writ).

■ But even though this be termed a direct attack upon the plan, the taxpayers by the above showing still have to prove an additional element before they discharge the burden the law places upon them. They labor under the burden of showing that the plan so adopted resulted in injury to them. The ranch owning taxpayers must show only substantial injury by reason of the adoption of the illegal plan, and to do this they must establish the value of their own property. This requirement was first set out in Montgomery County v. Humble Oil & Refining Co., 245 S.W.2d 326, 335 (Tex.Civ.App.—Beaumont 1951, writ ref'd n. r. e.). In the Humble case, the taxpayer was denied the relief because it did not tender evidence to show the val-

ue of its own properties and therefore failed to discharge its burden of showing injury. The distinction is noted in Atlantic Richfield Company v. Warren Independent School District, supra, where in that direct attack the taxpayer tendered evidence by qualified experts as to the value of its property and secured jury findings of a fair cash market value of their properties. The various Supreme Court approvals of the Humble case are therein noted. The Humble rule was again approved in Seguin Independent School District v. Blumberg, 402 S.W.2d 552, 557 (Tex.Civ.App.—San Antonio 1966, writ ref'd n. r. e.). The latest expression of the rule is contained in Lancaster Independent School District v. Pinson, 510 S.W.2d 380 (Tex.Civ.App.—Dallas 1974, no writ hist.). There, the taxing authority complained of the lack of evidence to support findings that the plan of taxation adopted would result in the plaintiffs paying more than their fair share of the taxes and asserted that in the absence of any evidence of market value of the plaintiffs' properties, the plaintiffs had failed to establish that they were injured by the tax plan in question. This point was sustained, the Court saying:

"Whether injunctive relief is sought before or after an illegal assessment plan is put into effect, taxpayers must show substantial injury in order to obtain injunctive relief against such a plan; that is to say, they must show that the plan would discriminate against them by deliberately assessing their property at a greater percentage of its true value than the percentage assessed for other properties subject to the tax. * * * If the plan is attacked on the ground of inequality of assessment, however, proof of actual market value of plaintiff's property is necessary, since without such proof no discrimination is established."

In examining the record before us, we find no testimony as to whether any rancher-taxpayer's property is located north or south of Interstate 10. There is no testimony valuing any individual ranch by its fair cash market value. There is no evidence by which it can be determined that any individual ranch owner taxpayer has been "substantially" injured. While testimony was offered, and which testimony was accepted by the fact finder, that ranch lands in the District had a reasonable market value of only between $14.00 to $18.00 an acre, there is nothing in the record before us to connect this evidence and finding with any individual ranch or rancher. Finally, in view of the testimony of Mrs. Brandon, the ranchers, for all we know, were going to have their valuations reduced to $10.00 an acre south of the highway and to $15.00 an acre north. There is therefore no way by which it can be determined that any ranch owner will be damaged in any amount. We hold that there has been a failure to discharge the burden of showing any substantial injury as far as the ranchers-taxpayers are concerned. The District's "no evidence" point as to ranch land discrimination is sustained.

The District's point challenging the findings by the trial Court of excessive valuations regarding the ranch lands is next considered. The ranch owners again make a constitutional attack when they complain of excessive valuations following the provision in the Texas Constitution that property may not be assessed in excess of its true market value. Texas Const. art. VIII, § 20. Market value again comes into play and from what we have seen there is no evidence in this record as to the market value of any one ranch nor as to any assessment in excess of true market value. See Pierce v. City of Jacksonville, 403 S. W.2d 512 (Tex.Civ.App.—Tyler 1966, writ ref'd n. r. e.). This "no evidence" point is sustained.

We next consider a series of points "no evidence" in nature attacking the findings of the Court that the School District systematically undervalued the pipelines, railroads and other corporate utilities by blind adherence to old schedules and without regard to market value, which under-

valuation if allowed would cause the plaintiffs-taxpayers to pay proportionately more taxes. This again is a challenge made by the taxpayers that the plan is discriminatory. The Humble rule again is applicable. Again, that rule defeats any attack made by the ranchers-taxpayers for the reasons previously stated. However, the Humble rule will not defeat the attack made by the property owners owning two pieces of property within the town of Sierra Blanca and the owners of the Sierra Blanca Corporation. As later seen, they established by competent evidence the reasonable market value of their properties.

The underlying theme of the Court's findings and conclusions is that the District systematically undervalued the pipelines, railroads and other corporate utilities by blindly adhering to old schedules used by taxing authorities and published in 1952 and 1956. The evidence does establish that the District used certain recognized schedules utilized by various taxing jurisdictions in the State and added an additional 20% of the total schedule value in fixing the taxes for the pipelines, railroads and utilities. But cash market value was the only criterion used by the Appellees in making their attack on the railroads, pipelines and utilities. Nowhere in the evidence is to be found the answer as to the cash market value for any pipeline, railroad or utilities for the year 1973. The only attack made by the Appellees was that the schedules were out of date. While the schedules might be outdated, there is no proof that their use substantially undervalued these properties from their cash market value. The points concerning the pipelines, railroads and utilities are sustained.

As an additional basis for concluding that the scheme of taxation was arbitrary and discriminatory, the trial Court found that there was a systematic overvaluation of the property within the town of Sierra Blanca; that commercial lots were arbitrarily valued at $2,000.00 each; and other lots at $1,000.00; that the Palace Hotel property was valued for tax purposes at

$30,000.00 and its reasonable cash market value did not exceed $7,200.00; and that the Sierra Blanca building was valued for tax purposes at $3,500.00 and its reasonable cash market value did not exceed $940.00. Appellants' point is to the effect that the evidence is legally insufficient to support the finding of the trial Court that the District systematically overvalued the downtown properties and it likewise attacks the action of the trial Court in granting relief to the owners of the Palace Hotel and the Sierra Blanca building. Since it concerns the matter under discussion, another point will be referred to. By its seventh point of error, the Appellants complain that the trial Court erred in permanently enjoining the District from collecting all taxes under its plan of taxation, as relief, if any, should have been granted the plaintiffs on an individual basis.

Plaintiffs admit in their brief that this was not a class action and argue that the permanent injunction granted by the Court did not affect other taxpayers who did not appear as plaintiffs. In this regard, the judgment of the Court was to the effect that the defendants would be enjoined from putting their entire plan of valuation adopted by them into effect and further that the defendant-assessor-collector should reevaluate all lands and all other taxable property in the District on an equal and uniform basis without any limitation. This not being a class action or any attempt to make it a class action, the Court should have limited the injunction relief in favor of those plaintiffs who qualified for the relief. Where proof of excessiveness or of substantial injury is required as a prerequisite to granting of relief, that proof must be made as to each taxpayer who seeks relief. The injunction cannot stand as to every taxpayer within the District. City of Arlington v. Cannon, supra, 271 S.W.2d at 418.

With this, we consider the valuations of the downtown properties and particularly of the Palace Hotel and the

Sierra Blanca building. We have examined the record and find no evidence having been offered on valuations of lots other than with regard to these two buildings. As to these two buildings, the Court's conclusions as to reasonable market value are legally supported by the evidence and as to these two pieces of property there was a grossly excessive valuation made. When a grossly excessive valuation has been made, this alone is sufficient to establish such fraud or illegality as to render that valuation void. With proof of a grossly excessive valuation, then the decision of a Board of Equalization may be challenged even by a collateral attack. City of Waco v. Conlee Seed Company, Inc., 449 S.W.2d 29 (Tex.Sup.1969). While just what is meant by being grossly excessive has not been precisely defined, most cases have struck down assessments when they are found to represent some multiple of true market value. However, in Pierce v. City of Jacksonville, supra, assessments of 33% or less above market value were upheld but all those greater than 33% above market value were invalidated as being grossly excessive. Here, as determined by the trial Court, the assessed valuations of the two properties discussed exceeded the cash market value by a multiple of four. We hold these to be grossly excessive valuations of the two properties. The Appellants' points insofar as they affect the Palace Hotel and the Sierra Blanca building are overruled. Insofar as the points attack the Court's finding in regard to all other downtown properties, they are sustained.

Finally, we consider the properties of the Sierra Blanca Corporation. This is a land development company located within the District and actively engaged in selling residential homesites. The trial Court determined that the School District assessed these lots on the basis of $800.00 for undeveloped lots and $2,500.00 for developed lots, while the actual cash market value of the lots was found to be $400.00 to $600.00, respectively, and that the corporation suffered a substantial injury as a result of the excessive valuation. The attack made by the District is that the evidence is legally insufficient to support these findings, as the sales contracts which were introduced into evidence supported the assessments made by the School District. The School District ignores the fact that the sales contracts were all for small amounts down and were to be carried over an extended period of years. While these sales contracts were evidentiary of cash market value, they do ignore the testimony of expert witnesses that the cash market value of the lots were within the range as determined by the trial Court. The lots of the Sierra Blanca Corporation were grossly overvalued. City of Waco v. Conlee Seed Company, Inc., supra. The legal insufficiency points as made by the District to the lots of the Sierra Blanca Corporation are all overruled. Also, having considered the evidence as a whole as they relate to the lots of the Sierra Blanca Corporation, the factual insufficiency points are overruled.

The District contends that the trial Court erred in rendering judgment in favor of the plaintiffs as there was no evidence of bad faith on the part of the District. While we have some doubts as to the exact thrust of this point, we hold that on those points where the position of the Appellants has been overruled any question of good faith or bad faith on the part of the District becomes immaterial. Where the valuations have been struck down as being grossly excessive, then the intention with which the acts were done are of no consequence. A grossly excessive valuation alone is sufficient to establish fraud or illegality. See City of Waco v. Conlee Seed Company, Inc., supra, at 32; Atlantic Richfield Company v. Warren Independent School District, supra, 453 S.W.2d at 199.

Certain factual insufficiency points made by the District have not been discussed where legal insufficiency points made by the District were sustained. We will not pass on these factual insufficiency points at this time. However, all other points which we have not discussed have been duly considered and they are overruled.

The judgment of the trial Court enjoining the School District from putting the present tax plan into effect insofar as it affects the Palace Hotel property, the Sierra Blanca building, and the other Sierra Blanca Corporation properties is affirmed. In all other respects, that judgment is reversed and is here rendered. Regarding the Palace Hotel property, the Sierra Blanca building and the other Sierra Blanca Corporation properties, this judgment is without prejudice to the right of the School District to again assess and value those properties in accordance with law and to collect such taxes for the year 1973 as may be due thereon.

All costs incurred in all Courts are assessed and adjudged one-half against Appellants and one-half against all Appellees with the exception of the Appellee-owners of the Palace Hotel property, the Sierra Blanca building and the Appellee Sierra Blanca Corporation.