

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

---

No. 02-24-00305-CV

---

MITCH VEXLER, CATHERINE VEXLER, MAVEX SHOPS OF FLOWER
MOUND, LP, JIM SOLINSKI, AND GLORIA SOLINSKI, Appellants

V.

DON SPENCER, IN HIS CAPACITY AS CHIEF APPRAISER OF DENTON
CENTRAL APPRAISAL DISTRICT, AND DENTON CENTRAL APPRAISAL
DISTRICT, Appellees

---

On Appeal from the 481st District Court
Denton County, Texas
Trial Court No. 23-9526-481

---

Before Kerr, Wallach, and Walker, JJ.
Memorandum Opinion by Justice Kerr

# MEMORANDUM OPINION

Appellants Mitch Vexler, Catherine Vexler, Mavex Shops of Flower Mound, LP, Jim Solinski, and Gloria Solinski—a group of Denton County property owners[1]—sued Appellees Denton Central Appraisal District and its Chief Appraiser, Don Spencer, in his official capacity, under a variety of theories challenging their property taxes and more broadly attacking DCAD's and Spencer's implementing the Texas Tax Code. DCAD and Spencer filed separate pleas to the jurisdiction, raising the Property Owners' failure to sue under the legislatively mandated exclusive-remedies provision in the tax code, *see* Tex. Tax Code Ann. § 42.09, and DCAD also raised their lack of standing to challenge the constitutionality of Section 23.01(b) of the Texas Tax Code, *see id.* § 23.01(b). Because the trial court correctly granted both jurisdictional pleas, we affirm.

## I. Background

The Property Owners initially sued DCAD, Spencer, Hope McClure (Spencer's predecessor, in her official capacity), and Michelle French (in her capacity as Denton County's Tax Assessor–Collector). The Property Owners challenged their assessed property-tax amounts, as well as the appraisal system as a whole, asserting claims for declaratory relief (including a declaration that Section 23.01 of the Texas Tax Code is unconstitutional), injunctive relief, relief for alleged ultra vires acts, and money had

---

[1]For ease and clarity, we refer to Appellants collectively as the "Property Owners."

and received (including actual and exemplary damages). They also sought attorney's fees. Each defendant answered, filed a plea to the jurisdiction, and set the plea for a hearing on May 2, 2024.

Eight days before the hearing, the Property Owners amended their petition and, among other things, dropped their claims against McClure and French. Focusing solely on DCAD and Spencer, the Property Owners alleged that when DCAD sent out its 2023 notices of appraised values, DCAD had "brazenly," "recklessly," and "fraudulent[ly]" increased Denton County property values as it had done "for years, unchecked and without any accountability." The Property Owners alleged that DCAD was not following the law or any recognizable appraisal method in appraising Denton County property. They also alleged that DCAD had artificially and arbitrarily increased property values "so that the various taxing entities/units [could] collect illegal and inflated property taxes."

Among other things, the Property Owners alleged that in 2021, former DCAD Chief Appraiser McClure, and her then-deputy and later-successor, Spencer, had falsified the tax rolls to the Texas Comptroller's Office. DCAD's allegedly fraudulent property valuations had cost taxpayers their money, time, and effort in fighting against allegedly illegal taxation. The Property Owners alleged that DCAD's valuations were not uniform and equal as required by the Texas Constitution and that DCAD, Spencer, and his predecessor had been aware of a myriad of problems within DCAD

3

for years, including staffing and management issues, a lack of policies and procedures, a lack of professionalism, a lack of training, and a lack of a compliance director.

The Property Owners sought declaratory relief, injunctive relief, and money damages to reimburse them for taxes they had paid.[2] We outline the Property Owners' pleaded theories for requesting these remedies:

**Declaratory Relief:**[3] The Property Owners sought declarations that DCAD had violated the Texas Tax Code by failing to comply with various provisions from the Uniform Standards of Professional Appraisal Practice (USPAP)[4] when conducting 2023's mass appraisal. They also sought a declaration that DCAD's valuation of their properties violated the Texas Constitution's equal-and-uniform requirement.

---

[2]They also expressly contemplated that additional Denton County property owners would join the lawsuit. The amended petition grouped the potential future litigants into three categories: "(1) those who accepted DCAD's fraudulent appraisals; (2) those who protested DCAD's appraisals to the ARB [appraisal review board] like the Solinskis; and (3) those who ha[d] appealed the ARB's appraisal to a district court, like the Vexlers and Mavex." Although DCAD's nonjurisdictional defenses are not before us, we observe that DCAD alleged in its Original Answer that Mavex Shops had previously sued DCAD in a separate lawsuit challenging Section 23.01's constitutionality, which resulted in a final agreed judgment that DCAD argued barred Mavex Shops from relitigating identical claims.

[3]The Property Owners sought their attorneys' fees under the Declaratory Judgments Act. *See* Tex. Civ. Prac. & Rem. Code Ann. § 37.009.

[4]*See generally* Tex. Tax Code Ann. § 23.01(h)(3) (stating that the "[a]ppraisal methods and techniques included in the most recent version[] of the following are considered generally accepted appraisal methods and techniques for the purposes of this title: . . . the Uniform Standards of Professional Appraisal Practice published by The Appraisal Foundation").

4

The Property Owners further alleged that Spencer had committed ultra vires acts. They sought a declaratory judgment (1) "that Spencer committed ultra vires acts in connection with the certification of the 2021 Denton County tax roll" and (2) "that Spencer committed an ultra vires act by authorizing and condoning appraisals to occur outside of the PACS [Appraisal] software DCAD use[d] to conduct mass appraisals."

Additionally, the Property Owners specifically challenged the constitutionality of the following provision in Section 23.01(b): "If the appraisal district determines the appraised value of a property using mass[-]appraisal standards, the mass[-]appraisal standards must comply with [USPAP]." *See* Tex. Tax Code Ann. § 23.01(b). Even though the Property Owners wanted declarations that DCAD and Spencer had failed to comply with the USPAP, their constitutional claim presented a "facial challenge" to the "unfettered legislative delegation" to the private entity that writes the USPAP standards and asked the trial court to determine that Section 23.01 violates (1) Article III, Section 36 of the Texas Constitution, (2) Article II, Section 1 of the Texas Constitution, and (3) Section 2001.021 of the Texas Government Code (within the Administrative Procedures Act).[5]

---

[5]The Property Owners failed to notify the Attorney General of their constitutional challenge, but DCAD filed the requisite statutory notice. *See* Tex. Gov't Code Ann. § 402.010.

**Injunctive Relief:** The Property Owners alternatively pleaded for prospective injunctive relief. Notably, this request was not made as part of their ultra vires claim against Spencer. Instead, the Property Owners pleaded that if the trial court determined that Section 23.01 was constitutional, the Property Owners requested a "permanent injunction against DCAD and Don Spencer to follow and adhere to the USPAP standards for mass appraisals going forward."

**Takings Damages:** The Property Owners asserted a takings claim under the Texas Constitution against DCAD. *See* Tex. Const. art. I, § 17. They claimed that DCAD had taken their property—that is, their money "for the fraudulently levied property taxes"—"in a fraudulent and illegal manner."

**Tax Refund:** Relabeling their money-had-and-received claim, the Property Owners claimed to be pursuing a "common[-]law reimbursement claim," in which they sought reimbursement from DCAD for their payments of "illegally levied taxes." They sought "a return of the illegal taxes collected by DCAD" and claimed that because their "injuries resulted from DCAD's gross negligence, malice, or actual fraud," they were also entitled to exemplary damages.

Three days before the hearing on the jurisdictional pleas, the Property Owners responded to the pleas, and DCAD replied. Upon hearing both pleas, the trial court granted them, dismissed the Property Owners' claims against DCAD and Spencer, and signed a final judgment. The Property Owners filed a motion for new trial and a

6

motion to reconsider, to which Spencer and DCAD responded. The trial court heard and denied both motions.

## II. Issues Presented

The Property Owners raise four issues on appeal. The first two concern their claims against Spencer and the latter two their claims against DCAD. First, they argue that the trial court should have exercised jurisdiction over their request for prospective injunctive relief to require Spencer to follow the law. Second, they assert that the trial court should have exercised jurisdiction over their declaratory-judgment claims against Spencer concerning his alleged prior violations of the law. Third, they argue that the trial court had jurisdiction to order a tax refund. Fourth, they dispute the trial court's determination that they did not have standing to challenge Section 23.01(b)'s constitutionality.

## III. Standard of Review

Unless the state consents to suit, sovereign immunity deprives a trial court of jurisdiction over lawsuits against the state or certain governmental units. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 224 (Tex. 2004) (op. on reh'g). Appraisal districts are political subdivisions of the state and, absent waiver, are similarly entitled to governmental immunity. Tex. Tax Code Ann. § 6.01(c) ("An appraisal district is a political subdivision of the state."); *Travis Cent. Appraisal Dist. v. Norman*, 342 S.W.3d 54, 57–58 (Tex. 2011).

A plea to the jurisdiction is a dilatory plea that seeks dismissal of a case for lack of subject-matter jurisdiction. *Harris County v. Sykes*, 136 S.W.3d 635, 638 (Tex. 2004). A jurisdictional plea may challenge the pleadings, the existence of jurisdictional facts, or both. *Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 770 (Tex. 2018). Whether a court has subject-matter jurisdiction is a legal question, and we review de novo a trial court's ruling on a plea to the jurisdiction. *Miranda*, 133 S.W.3d at 226, 228.

When, as here, a plea challenges the pleadings, we determine if the plaintiff has alleged facts that affirmatively demonstrate the trial court's jurisdiction. *Id.* at 226. We construe the pleadings liberally in the plaintiff's favor and look to the plaintiff's intent. *Id.* If the pleadings are insufficient to establish jurisdiction but do not affirmatively demonstrate an incurable defect in jurisdiction, the plaintiff should ordinarily be given the opportunity to amend. *See id.* at 226–27. But if the pleadings affirmatively negate the existence of jurisdiction altogether, then a jurisdictional plea may be granted without allowing a (necessarily futile) chance to amend. *See id.* at 227.

Overarching all these principles is that "the plea should be decided without delving into the merits of the case." *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000); *see also Vernco Constr., Inc. v. Nelson*, 460 S.W.3d 145, 149 (Tex. 2015) ("When a jurisdictional issue is not intertwined with the merits of the claims, which is the case here, disputed fact issues are resolved by the court, not the jury.").

## IV. Discussion

We first discuss the Property Owners' claims for declaratory, injunctive, and monetary relief (other than concerning Section 23.01(b)'s constitutionality)—the subject of their first three appellate issues—and next address their request to declare part of Section 23.01(b) unconstitutional—the subject of their fourth issue. As we explain, the trial court did not err in granting the jurisdictional pleas.[6] And because the Property Owners failed to cure the jurisdictional defects that were pointed out to them before they amended their petition, they are not entitled to a remand.

### A. Tax Code Section 42.09's Exclusive Remedies

The Property Owners have described themselves as five of the approximately 500,000 Denton County taxpayers who are seeking to end the alleged "systematic[] miscalculat[ion]" of Denton County property taxes. They sought declarations "that [DCAD's and Spencer's] past behavior violated the law, an injunction against future violations, and a refund of the taxes [they] paid based on the illegal assessments." In their first three appellate issues, the Property Owners contend that the trial court should have exercised jurisdiction over their claims for declaratory and injunctive relief (unrelated to the Section 23.01(b) challenge) and for a tax refund. But we agree with Spencer and DCAD that Section 42.09 of the Texas Tax Code bars these claims.

---

[6]The Property Owners do not challenge the trial court's dismissal of their takings claim. We therefore affirm the dismissal of that claim. *See Fossil Grp., Inc. v. Harris*, 691 S.W.3d 874, 880 n.11 (Tex. 2024) (concluding party waived any challenge to claim dismissed by trial court by not addressing it in its brief).

### 1. Applicable Law

"Taxation shall be equal and uniform." Tex. Const. art. VIII, § 1(a). Before 1982's tax-code amendments, for any taxpayer resisting allegedly unconstitutional taxation, court-created common-law remedies left "a very unsatisfactory state of affairs." *Valero Transmission Co. v. Hays Consol. Indep. Sch. Dist.*, 704 S.W.2d 857, 861–62 (Tex. App.—Austin 1985, writ ref'd n.r.e.).

A pre-1982 opinion from the Beaumont Court of Appeals outlined the then-extant situation: "An aggrieved taxpayer who assert[ed] that a taxing agency ha[d] adopted a fundamentally erroneous and arbitrary plan of taxation which increase[d] his share of the tax burden ha[d] two remedies available." *Owens-Illinois, Inc. v. Little Cypress-Mauriceville Indep. Sch. Dist.*, 481 S.W.2d 477, 482 (Tex. App.—Beaumont 1972, writ dism'd). First, the taxpayer could "allow the taxing agency to put the plan into effect and challenge the assessment in defense of a suit to collect the delinquent taxes based upon the assessment." *Id.* Second the taxpayer could act on a prospective basis and could "make a direct attack by availing himself of the remedies of mandamus and injunction to prevent a taxing authority from putting such a plan into effect." *Id.* Each option carried different burdens and risks for the taxpayer, but "[t]he chief characteristic of this state of affairs was that the taxpayer normally lost." *Valero Transmission Co.*, 704 S.W.2d at 861 (citing Mark G. Yudof, *The Property Tax in Texas Under State and Federal Law*, 51 Tex. L. Rev. 885, 895–96 (1973)).

But after a legislative overhaul, the tax code "provides for a regular, systematic, certain, and effective remedy for a taxpayer who believes his tax to be erroneous for any reason." *Id.* at 860 n.1; *see Atascosa Cnty. Appraisal Dist. v. Tymrak*, 858 S.W.2d 335, 337 (Tex. 1993) (generally describing the tax code's "annual administrative process" and explaining that a property owner "must pursue the annual administrative process for each tax year that he wants to appeal to the trial court"). Every year, the appraisal district, through its chief appraiser, appraises taxable property generally at its market value as of January 1. Tex. Tax Code Ann. § 23.01. Each property owner is given notice and has the right to protest the appraised value before an ARB. *Id.* §§ 25.19(a), 41.41(a).

> A property owner is entitled to protest, among other actions:
>
> (1) [the] determination of the appraised value of the owner's property or, in the case of [certain land appraisals, the] determination of its appraised or market value;
>
> (2) [the] unequal appraisal of the owner's property; [or]
>
> . . . .
>
> (9) any other action of the chief appraiser, appraisal district, or appraisal review board that applies to and adversely affects the property owner.

*Id.* § 41.41(a). When a property owner protests, the ARB hears the protest and determines value. *Id.* §§ 41.01(a)(1), 41.45, 41.47. An owner may appeal an ARB order to a district court. *Id.* §§ 42.01, 42.23(a).

The Texas Tax Code further provides that its remedies are exclusive, stating in pertinent part that

> procedures prescribed by this title for adjudication of the grounds of protest authorized by this title are exclusive, and a property owner may not raise any of those grounds . . . as a basis of a claim for relief in a suit by the property owner to arrest or prevent the tax collection process or to obtain a refund of taxes paid.

*Id.* § 42.09(a)(2). Through Section 42.09, the Legislature not only abolished previously existing common-law remedies to redress unconstitutional taxation but also created an exclusive statutory remedial scheme. *Id.*; *Cameron Appraisal Dist. v. Rourk*, 194 S.W.3d 501, 502 (Tex. 2006) (requiring taxpayers to adhere to the tax code's administrative framework before filing suit); *Matagorda Cnty. Appraisal Dist. v. Coastal Liquids Partners, L.P.*, 165 S.W.3d 329, 331 (Tex. 2005) ("[A] taxpayer's failure to pursue an [ARB] proceeding deprives the courts of jurisdiction to decide most matters relating to ad valorem taxes."); *SPX Corp. v. Altinger*, 614 S.W.3d 362, 378–80 (Tex. App.—Houston [14th Dist.] 2020, no pet.) (collecting cases holding that the tax code's exclusive remedial scheme supplanted common-law claims, equitable remedies, and claims outside of Chapter 42 of the tax code); *Schneider v. Williamson Cent. Appraisal Dist.*, No. 03-16-00781-CV, 2017 WL 2417836, at *2 (Tex. App.—Austin May 31, 2017, pet. denied) (mem. op.) (same).

### 2. Analysis

The flaw in the Property Owners' lawsuit is that they have tried to sue DCAD and Spencer outside of the tax code's exclusive remedial scheme. The Property

Owners complain about DCAD's and Spencer's prior conduct and how that alleged conduct has continued and will continue to adversely impact the appraised values of their respective properties—all of which are grounds for protest. *See* Tex. Tax Code Ann. § 41.41(a). But the Property Owners did not affirmatively allege that they are seeking judicial review of their respective ARB orders under the Texas Tax Code. *See id.* §§ 42.01, 42.23(a); *see also Town of Shady Shores v. Swanson*, 590 S.W.3d 544, 550 (Tex. 2019) (requiring plaintiffs to allege facts that affirmatively demonstrate the court's jurisdiction to hear the claim). Rather, they have tried to state claims outside of the Texas Tax Code's exclusive remedial process.

For instance, the Property Owners requested various declarations under the Declaratory Judgments Act concerning DCAD's and Spencer's past conduct—including for Spencer's alleged ultra vires acts. But the Declaratory Judgments Act does not create or enlarge a trial court's subject-matter jurisdiction. *Bauer v. Braxton Minerals III, LLC*, 689 S.W.3d 633, 640 n.4 (Tex. App.—Fort Worth 2024, pet. filed). It is only a procedural device for deciding cases already within the trial court's jurisdiction. *Id.* (first citing *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443–44 (Tex. 1993); then citing *Devon Energy Prod. Co. v. KCS Res., LLC*, 450 S.W.3d 203, 210 (Tex. App.—Houston [14th Dist.] 2014, pet. denied); and then citing Tex. Civ. Prac. & Rem. Code Ann. § 37.004(a)).

Because Section 41.41(a) provides the exclusive method to protest the appraisal of their properties, the Property Owners cannot ignore their exclusive tax-code

13

remedies and employ the Declaratory Judgments Act in a standalone fashion.[7] *See* Tex. Tax Code Ann. §§ 41.41(a), 42.09; *SPX Corp.*, 614 S.W.3d at 378–80 ("But where, as here, the Property Tax Code authorizes a particular ground of protest, then the Code's procedures are the property owner's exclusive means of adjudicating that ground as a basis for tax relief."). The trial court therefore correctly dismissed the Property Owners' declaratory-relief claims. *See Rourk*, 194 S.W.3d at 502; *SPX Corp.*, 614 S.W.3d at 378–80; *Schneider*, 2017 WL 2417836, at \*2.

The same holds true for the Property Owners' request for judicial declarations that Spencer committed ultra vires acts in certifying "the 2021 Denton County tax roll" and "by authorizing and condoning appraisals to occur outside of the PACS software DCAD uses to conduct mass appraisals."[8] Because Section 41.41(a)(9) allows

[7]The Property Owners argue that the Texas Tax Code does not provide grounds for protesting DCAD's alleged failure to comply with Section 23.01(a)'s mass-appraisal requirements, but they are incorrect. Section 41.41(a) clearly states that a taxpayer may protest the "determination of the appraised value of the owner's property," the "unequal appraisal of the owner's property," and "any other action of the chief appraiser, appraisal district, or [ARB] that applies to and adversely affects the property owner." Tex. Tax Code Ann. § 41.41(a)(1), (2), (9). These broad grounds certainly encompass a protest arising out of an alleged failure to comply with Section 23.01(a)'s mass-appraisal requirements. *Cf. Webb County Appraisal Dist. v. New Laredo Hotel, Inc.*, 792 S.W.2d 952, 954 (Tex. 1990) ("The intent of the administrative review process is to resolve the majority of tax protests at this level, thereby relieving the burden on the court system.").

[8]Governmental immunity "does not bar a suit against a government officer for acting outside his authority—i.e., an ultra vires suit." *See Houston Belt & Terminal Ry. Co. v. City of Houston*, 487 S.W.3d 154, 161 (Tex. 2016). "To fall within this ultra vires exception . . . a suit . . . must allege . . . that the officer acted without legal authority or failed to perform a purely ministerial act." *City of El Paso v. Heinrich*, 284 S.W.3d 366,

the Property Owners to protest "any other action of the chief appraiser . . . that applies to and adversely affects the property owner," the Texas Tax Code provided the Property Owners their exclusive remedy to raise the official-capacity complaints about Spencer's (or his predecessors') past conduct that are the subject of the Property Owners' ultra vires claims. *See* Tex. Tax Code Ann. §§ 41.41(a)(9), 42.09(a). Accordingly, the trial court properly refused to exercise subject-matter jurisdiction over the Property Owners' claim seeking "a declaratory judgment that Spencer committed ultra vires acts." *See id.* § 42.09(a); *Rourk*, 194 S.W.3d at 502; *SPX Corp.*, 614 S.W.3d at 378–80; *Schneider*, 2017 WL 2417836, at *2.

Similarly, the trial court properly dismissed the Property Owners' money-had-and-received claim that the Property Owners relabeled as a claim for "reimbursement of funds paid by illegally levied taxes." In their tax-refund claim, the Property Owners outlined the elements of a money-had-and-received claim and, in response to the jurisdictional pleas, added a paragraph trying to explain why their relabeled "common[-]law reimbursement claim" was not barred by governmental immunity.

But the Property Owners' explanation falters because, among other reasons, the 1982 tax-code amendments abolished common-law reimbursement claims and provided the exclusive means to obtain a tax refund. *See* Tex. Tax. Code Ann. § 42.43 (providing method to obtain a tax refund from a taxing unit—not from an

372 (Tex. 2009). Such "ultra vires claims" may seek only prospective injunctive remedies. *Id.* at 376.

15

appraisal district or its chief appraiser), § 42.09(a); *Valero Transmission Co.*, 704 S.W.2d at 862 ("The necessary consequence of making the Code provisions exclusive . . . is to abolish the previously existing common[-]law actions created to prevent unconstitutional taxation." (citing *Tex. Architectural Aggregate, Inc. v. Adams*, 690 S.W.2d 640, 642–43 (Tex. App.—Austin 1985, no writ))). Therefore, the trial court properly refused to exercise jurisdiction over the Property Owners' tax-refund claim.[9] *See* Tex. Tax Code Ann. § 42.09; *Rourk*, 194 S.W.3d at 502; *SPX Corp.*, 614 S.W.3d at 378–80; *Schneider*, 2017 WL 2417836, at *2.

Likewise, the trial court properly dismissed the Property Owners' claims for injunctive relief, in which they sought to prospectively require "DCAD and Don Spencer to follow and adhere to the USPAP standards for mass appraisal going forward." The Property Owners argue that they ought to be able to enjoin DCAD and Spencer into compliance with the Texas Tax Code outside of the statutory process, which they characterize as "border[ing] on the Byzantine."[10] *See Herrera v.*

---

[9]The Property Owners sprinkled "fraud" allegations throughout their amended complaint and specifically in their relabeled money-had-and-received claim. But nowhere did they allege or identify a legislative waiver enabling them to obtain a tax refund premised on allegedly fraudulent conduct. *See City of Fort Worth v. Pastusek Indus., Inc.*, 48 S.W.3d 366, 372 (Tex. App.—Fort Worth 2001, no pet.) (dismissing fraud claims against appellants, including Tarrant Appraisal District, for lack of jurisdiction).

[10]As we pointed out above, under the pre-1982 system, taxpayers could prospectively seek injunctive relief to prevent an alleged illegal or fraudulent tax scheme from being implemented. *See Owens-Illinois, Inc.*, 481 S.W.2d at 482.

*Mata*, 702 S.W.3d 538, 540 (Tex. 2024) (discussing generally when ultra vires claims for prospective relief may be brought but without discussing Section 42.09's application); *see also Heinrich*, 284 S.W.3d at 374 ("The law of remedies against governments and government officials is a vast and complex body of doctrine, full of technical distinctions, fictional explanations, and contested compromises." (quoting Douglas Laycock, *Modern American Remedies* 482 (3d ed. 2002))). But the Legislature has prescribed the exclusive remedies that taxpayers must use for tax protests, *see* Tex. Tax Code Ann. §§ 41.41(a), 42.09, and "[t]he Legislature intends courts to follow its instructions[,]" *Rodriguez v. Safeco Ins. Co. of Indiana*, 684 S.W.3d 789, 795 (Tex. 2024) ("[I]t is not for courts to decide if legislative enactments are wise or if particular provisions of statutes could be more effectively worded to reach what courts or litigants might believe to be better or more equitable results.").

Because the Legislature abolished the common-law remedies created to prevent unconstitutional taxation, including claims seeking prospective injunctive relief like the Property Owners pleaded, the trial court properly dismissed their claim for injunctive relief. *See Rourk*, 194 S.W.3d at 502; *SPX Corp.*, 614 S.W.3d at 378–80; *Schneider*, 2017 WL 2417836, at *2 ("[T]rial courts do not have jurisdiction over claims for declaratory and injunctive relief in ad valorem tax disputes, including those based on alleged constitutional violations."); *Parra Furniture & Appliance Ctr., Inc. v. Cameron Appraisal Dist.*, No. 13-09-00211-CV, 2010 WL 672882, at *4 (Tex. App.—Corpus

17

Christi–Edinburg Feb. 25, 2010, no pet.) (mem. op.) (holding that claims for injunctive relief fall outside of the Texas Tax Code and are barred by immunity).

In sum, the Property Owners' first three appellate issues complain about the trial court's dismissing their claims for injunctive relief, for declaratory relief (other than the facial challenge to Section 23.01(b)), and for a tax refund. Because the tax code jurisdictionally bars the Property Owners from raising these three claims outside of the Texas Tax Code's exclusive remedial scheme, and because the Property Owners otherwise failed to affirmatively demonstrate the trial court's subject-matter jurisdiction by alleging a valid waiver of immunity, the trial court properly granted DCAD's and Spencer's pleas to the jurisdiction on these claims, and we overrule the Property Owners' first three issues. *See Kamy Investments, LLC v. Denton Cnty. Appraisal Review Bd.*, No. 02-23-00487-CV, 2024 WL 3611451, at *13 (Tex. App.—Fort Worth Aug. 1, 2024, no pet.) (mem. op.).

## B. Standing

In their fourth issue, the Property Owners argue that the trial court erred by determining that they lacked standing to seek a declaration that part of Section 23.01(b) is facially unconstitutional. We disagree.

### 1. Applicable Law

"Generally, a citizen lacks standing to bring a lawsuit challenging the lawfulness of governmental acts." *Andrade v. NAACP of Austin*, 345 S.W.3d 1, 5 (Tex. 2011). This concept reflects "the rule that neither citizens nor taxpayers can appear in court

18

simply to insist that the government and its officials adhere to the requirements of law." *Id.* (cleaned up).

The government may challenge a party's standing by a plea to the jurisdiction. *Busbee v. County of Medina*, 681 S.W.3d 391, 395 (Tex. 2023). As the supreme court has stated,

> Standing consists of some interest peculiar to the person individually and not just as a member of the public. A plaintiff has standing to seek prospective relief only if he [or she] pleads facts establishing an injury that is concrete and particularized, actual or imminent, not hypothetical. An opinion issued in a case brought by a party without standing is advisory because rather than remedying an actual or imminent harm, the judgment addresses only a hypothetical injury.

*Garcia v. City of Willis*, 593 S.W.3d 201, 206 (Tex. 2019) (cleaned up). "Standing to sue may be predicated upon either statutory or common law authority." *Everett v. TK-Taito, L.L.C.*, 178 S.W.3d 844, 850 (Tex. App.—Fort Worth 2005, no pet.) (citing *Williams v. Lara*, 52 S.W.3d 171, 178–79 (Tex. 2001)).

### 2. Analysis

Here, the Property Owners pleaded a facial challenge to the constitutionality of this part of Section 23.01(b): "If the appraisal district determines the appraised value of a property using mass[-]appraisal standards, the mass[-]appraisal standards must comply with [USPAP]." *See* Tex. Tax Code Ann. § 23.01(b). DCAD challenged the Property Owners' standing to assert their facial challenge to Section 23.01(b), arguing that they had failed to allege a particularized injury and had failed to identify an "'actual or threatened restriction' they are suffering by [DCAD's] compliance with

Section 23.01(b)." *See Tex. Workers' Comp. Comm'n v. Garcia*, 893 S.W.2d 504, 518 (Tex. 1995) ("[T]o satisfy the requirements of standing, [the parties facially challenging a statute] must demonstrate that they are suffering some actual or threatened restriction under the [statute]."). The Property Owners claim to have standing because they "are five of the approximately 500,000" Denton County property taxpayers.

On appeal, the Property Owners make two standing arguments. First, they claim to "possess taxpayer standing." As the supreme court stated in *Perez v. Turner*, "Properly construed, taxpayer standing provides important protection to the public from the illegal expenditure of public funds without hampering too severely the workings of the government." 653 S.W.3d 191, 199 (Tex. 2022) (cleaned up). Taxpayer standing is generally limited to a plaintiff who can show "(1) that the plaintiff is a taxpayer; and (2) that the public funds are being expended on an allegedly illegal activity." *Id.* (cleaned up). But the Property Owners' argument about taxpayer standing—and their reliance on cases like *Perez* concerning taxpayer standing—is misplaced.

Here, even after DCAD raised the Property Owners' lack of standing and the Property Owners amended their petition, they failed to plead that DCAD is expending public funds on an allegedly illegal activity. Nor did the Property Owners seek an injunction against such an expenditure. *See id.* (concluding that a plaintiff had taxpayer standing who had alleged that a tax was "altogether illegal and [sought] an injunction against expenditure of the proceeds."). Instead, the Property Owners

20

alleged merely that their property taxes had increased too much. Such an allegation is insufficient to establish taxpayer standing. *See id.*

The Property Owners' second argument—at first blush—seemingly elaborates on their first argument. The introductory header to the second argument states that the Property Owners "possess standing because they suffered a particularized injury when property they own was improperly assessed and they paid property taxes based on that illegal assessment." In arguing this issue, they claim to be on "equal footing" with the plaintiffs in *Perez*, 653 S.W.3d at 199, and in *Jones v. Turner*, 646 S.W.3d 319, 323 (Tex. 2022). But *Perez* and *Jones* are both taxpayer-standing cases in which the plaintiffs alleged not only that they were taxpayers but also that the defendant was expending public funds on allegedly illegal activity:

> The threshold dispute . . . was whether the challenged activity involved the expenditure of public funds at all. We required the plaintiffs to show that measurable, significant public funds that would not otherwise have been spent were truly at stake in order to assert taxpayer standing.

*Perez*, 653 S.W.3d at 199; *see Jones*, 646 S.W.3d at 323. Because the Property Owners' facial challenge to Section 23.01(b) does not challenge an allegedly illegal expenditure of public funds, the Property Owners do not stand in the same shoes as the taxpayers in *Perez* and *Jones*.

Although the Property Owners' second standing argument cites only taxpayer-standing cases, it appears that they are raising citizen standing in a more general sense—that is, whether the Property Owners have "some interest peculiar to [them]

and not just as [members] of the public."[11] *See Garcia*, 593 S.W.3d at 206. We have addressed a similar standing question in the context of a group of citizens challenging the constitutionality of Parker County's use of an electronic voting system. *Ramsey v. Miller*, No. 02-22-00412-CV, 2023 WL 3645468, at *1 (Tex. App.—Fort Worth May 25, 2023, pet. denied) (mem. op.).

In *Ramsey*, we determined that the citizens had not alleged a "concrete and particularized" injury but had "merely assert[ed] a generalized grievance." *Id.* at *3. The citizens' petition revealed that "far from asserting disparate treatment or a particularized injury, [they] actually impl[ied] that they [were] in the same situation as 'all Texas citizens.'" *Id.* at *4.

Similarly, the Property Owners' amended petition alleges the following:

- "DCAD is not following the law or any recognizable appraisal methods when appraising Denton County properties, but instead are artificially and arbitrarily increasing property values so that the various taxing entities/units can collect illegal and inflated property taxes."

---

[11]In the summary of their argument, the Property Owners argue that they "allege[d] an injury that is particular to them" because they "challenged the illegal valuation of the property they own and pay taxes on." DCAD responds that the Property Owners have not identified a particularized injury fairly traceable to DCAD that the underlying lawsuit could address. We are mindful of the supreme court's admonition that intermediate courts should hesitate to resolve appeals on a determination of inadequate briefing. *See Bertucci v. Watkins*, No. 23-0329, 2025 WL 807355, at *4–5 (Tex. Mar. 14, 2025). Given that DCAD's brief interpreted the Property Owners' brief as raising citizen standing and responded to that argument—even though the Property Owners cite no authorities other than taxpayer-standing cases—we will analyze the issue.

- "DCAD's fraudulent property valuations costs the taxpayers money, time, and effort."

- "On [their] face, DCAD's valuations are not uniform and equal as required by the Texas Constitution as such an increase far exceeds the present fair market cash value of those properties as a whole. This has been the case at DCAD for years, yet every chief appraiser has either outright ignored this problem at best, or willingly violated the constitutional rights of property owners in Denton County at worst. Property owners are entitled to appraisals that comply with constitutional and statutory requirements."

- "Plaintiffs assert that the entire mass appraisal system utilized by DCAD is unconstitutional and resulted in overvaluations across the board and collection of an illegal tax."

Similar to the allegations in *Ramsey*, the Property Owners' allegations here reveal the generalized nature of the Property Owners' claims and indicate that they stand in the same position as all Denton County property-owning taxpayers. *See id.* The Property Owners therefore did not allege a concrete and particularized injury. *See id.* (citing *Garcia*, 593 S.W.3d at 206–08 (holding that appellant lacked standing to bring prospective claims regarding the constitutionality of red-light traffic cameras because he "st[ood] in the same shoes as any other citizen who might potentially be fined for running a red light" and therefore "lack[ed] the particularized interest for standing that prospective relief requires")).

Additionally, the Property Owners have not alleged an "actual or imminent" injury from DCAD's abiding by USPAP when conducting future mass appraisals, which Section 23.01(b) requires. *See* Tex. Tax Code Ann. § 23.01(b). In fact, the Property Owners have not alleged any specific injury arising from Section 23.01(b)'s

alleged unconstitutionality.[12] The amended petition contained no allegations of how the "delegation of legislative authority to a private entity" that promulgates USPAP has caused the Property Owners any injuries. Nor have the Property Owners—in generally complaining about "across the board" "illegal and inflated property taxes" in Denton County—pleaded an injury that is redressable by DCAD, which does not set the tax rate or collect property taxes. *See* Tex. Tax Code Ann. §§ 26.01–.18 (providing the procedures for a taxing unit and its assessor–collector to calculate and assess taxes); § 41.01(a)(1) (stating that the ARB decides taxpayer protests); *see also id.* § 1.04(12) (defining "taxing unit"). Because our opining on Section 23.01(b)'s constitutionality would address only a hypothetical, non-redressable injury, such an opinion would be an impermissible advisory one. *See Garcia*, 593 S.W.3d at 206; *see also In re Hotze*, 627 S.W.3d 642, 648 (Tex. 2020) (orig. proceeding) (Blacklock, J., concurring) ("Although all citizens share a general interest in lawful government action, 'recognizing standing based on . . . an undifferentiated injury is fundamentally inconsistent with the exercise of the judicial power.'" (quoting *Protect Our Parks, Inc. v. Chicago Park Dist.*, 971 F.3d 722, 731 (7th Cir. 2020))).

---

[12]Pleading in the alternative, the Property Owners requested that if Section 23.01(b) was not ruled unconstitutional as an improper legislative delegation to the entity that promulgates USPAP, then they wanted a permanent injunction ensuring that DCAD follows USPAP.

Accordingly, because the Property Owners did not plead standing's requisite elements, the trial court properly dismissed their facial challenge to Section 23.01(b). We overrule the Property Owners' fourth issue.

## C. Repleading

The Property Owners have requested a remand to replead their claims if we determine that the trial court properly granted the jurisdictional pleas. Ordinarily, "Texas courts allow parties to replead unless their pleadings demonstrate incurable defects." *Dohlen v. City of San Antonio*, 643 S.W.3d 387, 397 (Tex. 2022).

But the supreme court has also stated that "[i]f a plaintiff has been provided a reasonable opportunity to amend after a governmental entity files its plea to the jurisdiction, and the plaintiff's amended pleading still does not allege facts that would constitute a waiver of immunity, then the trial court should dismiss the plaintiff's action." *Harris County*, 136 S.W.3d at 639; *see also Fraley v. Tex. A&M Univ. Sys.*, 664 S.W.3d 91, 101 (Tex. 2023) ("Once the defendant's jurisdictional plea gives notice of the jurisdictional defect, however, and the plaintiff responds with an amended pleading that 'still does not allege facts that would constitute a waiver of immunity,' then the trial court should order the case dismissed with prejudice.").

Here, on November 13, 2023, DCAD filed its plea to the jurisdiction—raising both Section 42.09's exclusive remedial scheme and the Property Owners' lack of standing. The hearing on DCAD's and the other defendants' pleas was scheduled for May 2, 2024, and the Property Owners knew of the hearing as of January 18, 2024.

Eight days before the hearing—on April 24—and over five months after DCAD pointed out the jurisdictional defects, the Property Owners filed an amended petition that did not fix any of those defects. Accordingly, the Property Owners are not entitled to a remand. *See Fraley*, 664 S.W.3d at 101; *Matzen v. McLane*, 659 S.W.3d 381, 395–96 (Tex. 2021) (denying remand for opportunity to amend when a party "has already been permitted to amend his petition to no avail"); *Clint Indep. Sch. Dist. v. Marquez*, 487 S.W.3d 538, 559 (Tex. 2016) (noting that plaintiffs were not entitled to another opportunity to replead when they "had the opportunity to, and did in fact, amend their pleadings in the trial court after the district filed its plea to the jurisdiction and motion to dismiss"); *Harris County*, 136 S.W.3d at 639.

## V. Conclusion

Having overruled the Property Owners' four issues, we affirm the trial court's final judgment.

/s/ Elizabeth Kerr
Elizabeth Kerr
Justice

Delivered: May 1, 2025